L. C. DUNLAP v. RAYWOOD RICE CANAL AND MILLING COMPANY.

Decided May 23, 1906.

**1.—Unsigned Verdict.**

The provision in article 1323, Revised Statutes, that the verdict in a civil case "shall be in writing and signed by the foreman of the jury" is directory, and objection to the verdict on this ground, after it has been received and the jury discharged, comes too late.

**2.—Special Issues—General Verdict.**

Where a case is submitted to the jury on special issues alone, and the jury, besides answering the special issues, returns a general verdict also, the general verdict should be disregarded by the court in rendering judgment.

**3.—Crop—Breach of Contract—Measure of Damages.**

Plaintiff sued defendant for breach of contract to furnish water to make a rice crop. The proper measure of damages is the reasonable market value of his share of the crop which plaintiff failed to make, but which he would have made but for the default of defendant, less the additional expense of raising and marketing a full crop over and above the expense of raising and marketing the crop that was in fact made.

**4.—Special Issues—Material Issue Omitted.**

Even though a material issue should not be submitted to the jury, still the judgment will be sustained if an answer to the question can be found from the evidence in the record.

**5.—Evidence—Judgment.**

Evidence considered and held, not to warrant the judgment.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*G. W. Tharp* and *E. B. Pitckett, Jr.,* for appellant.—The court erred in rendering judgment on the special verdict returned by the jury because the same was not signed by any member as foreman thereof, and it was,

therefore, not proper for the court to consider the same to base its judgment upon. Douglass v. Baker, 79 Texas, 499; Rev. Stats., art. 1323.

The court should have based the judgment on the general verdict. Blum v. Rogers, 71 Texas, 676; Dwyer v. Kalteyer, 68 Texas, 564.

Where the defendant has failed to furnish sufficient water to irrigate the rice, according to contract, the measure of damages would be the difference between what the crop did make and what it would have probably made if it had been properly watered, less the cost that would have been incurred in raising, harvesting and making a full crop, over and above what was incurred in raising, harvesting and making the crop which was, in fact, made. International & G. N. Ry. v. Pape, 73 Texas, 503; Raywood Rice Canal & Milling Co. v. Langford, 7 Texas Ct. Rep., 420.

*C. F. Stevens,* for appellee.—The statute requiring a verdict to be signed is directory and not mandatory.

When two verdicts are found by the jury, that only will be considered as the proper verdict upon which the judgment of the court is based. McKinnon v. Reliance Lbr. Co., 63 Texas, 30.

Where a special verdict does not find all the facts necessary to form the basis of a judgment, but does answer all the questions submitted, the court is presumed to have found from the evidence the omitted facts necessary to support the judgment if the evidence is presented to authorize the findings thus persumed, hence in this case if it was necessary to show the cost of planting the land and rice separately from the cost of harvesting and making the same, the court is presumed to have found such facts from the evidence although such issues were not submitted to the jury. Leary v. People's B. L. & S. Assn., 49 S. W. Rep., 635; Southern Cotton Oil Co. v. Wallace, 54 S. W. Rep., 638; Galveston, H. & S. A. Ry. Co. v. Botts, 55 S. W. Rep., 514.

REESE, Associate Justice.—This suit was instituted by L. C. Dunlap against the Raywood Rice Canal Company to recover damages for failure on the part of the Canal Company to furnish water for plaintiff's rice crops for the years 1900 and 1901, by reason of which, it is alleged, plaintiff failed to make full crops, his loss on this account amounting, for the crop of 1900, to $1,829.26, and for the crop of 1901, to $1,352.50.

The case was submitted to a jury upon special issues. It appears that the response of the jury to these questions was received by the court, is copied into the judgment and is made the basis of the judgment, whereby plaintiff recovered $366. As directed by the court, these answers to the questions submitted to them were written upon a separate piece of paper, but they were not signed by the foreman of the jury. Copied in the record is also a general verdict for the plaintiff for $1,333.92 signed by the foreman. This general verdict is not referred to in the judgment and no notice appears to have been taken of it by the court. From the judgment of the court in his favor for $366 plaintiff appeals.

In the first assignment of error appellant complains of the judgment based upon the special verdict because the same was not signed by the foreman of the jury. No objection was made to receiving the verdict on this account, the objection first appearing in the motion for a new trial. The special verdict is copied in the record from which it appears

that it was not signed by the foreman of the jury. It is provided by article 1323, Revised Statutes 1895, that the verdict (in a civil case) "shall be in writing and signed by the foreman of the jury," and it is insisted that this provision is mandatory, and that a verdict not so signed can not form the basis of a judgment.

We can not find that this question has been directly decided in this State. A similar statute in Kentucky was declared directory merely by the Supreme Court of that State, and it was held that an objection to a verdict on this ground came too late after the jury was discharged. (Berry v. Pusey, 80 Ky., 170.)

The same construction was placed upon a statute to the same effect in Iowa (20 Iowa, 465), and in Missouri (Menne v. Neumeister, 25 Mo. App., 300, distinguishing the case of Sage v. Brown, 34 Ind., 464). Similar statutes have been held· directory in this state. (Norwood v. Snell, 68 S. W. Rep., 773.)

We think the provision of the statute that the verdict shall be signed by the foreman of the jury should be held to be directory, and that objection to the verdict on this ground, made after it has been received and the jury discharged, comes too late.

It is also urged by appellants in the second assignment of error, that the court erred in not rendering judgment upon the general verdict signed by the foreman, which is copied in the record. The authorities cited in support of this proposition (Blum v. Rogers, 71 Texas, 676, and Dwyer v. Kalteyer, 68 Texas, 564) are not in point. In those cases the jury was directed to return a general verdict as well as to answer the questions submitted as special issues. The general verdict so returned could not properly be ignored by the court. In the present case there was no authority for the return of the general verdict. The case was submitted to the jury on the special issues alone. Unless made the basis, in some way, of a bill of exceptions it had no proper place in the record. It was properly ignored by the court in rendering judgment.

This also disposes of the fourth assignment which substantially raises the same objections to the judgment as those presented by the first and second assignments.

It is further insisted by appellant that if the special verdict could properly form the basis of a judgment, under the objections made, the court erred in applying the measure of damages thereto.

The proper measure of damages in a case of this kind is the reasonable market value of his share of the crop which appellant failed to make, but which he would have made but for the failure of appellee to furnish water in accordance with his contract, less the additional expense of raising and marketing a full crop over and above the expense of raising and marketing the crop that was in fact raised. (Raywood Rice Canal & Milling Co. v. Langford, 74 S. W. Rep., 926.) One-half of the additional crop which should have been realized belonged to appellee under the contract, but would have had to be raised and harvested at the expense of appellant, so that it would be right to deduct from the value of appellant's half of the additional crop what would have been the additional expense of raising and harvesting the entire crop. This would have given the net market value to appellant of the loss of crops sustained by reason of the breach of contract by appellee.

By the questions submitted to the jury they were required to find, among other things, the amount of rice that was raised by appellant for each of the years in question, the amount that would have been raised if appellee had furnished water in accordance with his contract, and the market value of the rice. No question was submitted to the jury as to the additional expense of raising and marketing the additional crop which would have been realized if appellee had furnished the water, without which it would have been impossible to find from the verdict what amount of damages appellant was entitled to recover. Instead of this, the jury was required to find "what was the cost of raising and harvesting a crop of rice" during each of the years 1900 and 1901, to which they replied that such cost was $10 per acre.

The jury also answered that appellant planted in 1900, 120 acres and in 1901, 145 acres, that he made in 1900, 374 sacks of rice and would have made 1,200 sacks, that he made in 1901, 1,100 sacks and would have made 1,450 sacks, if the crops had been watered. Applying the proper measure of damages to the facts thus found, it would appear that for the year 1900 appellant would have made, if the crop had been watered, 1,200 sacks, of which 600 sacks would have been appellant's share. Of the 374 sacks which were made it appears that appellee was entitled to one-half for land and water rent, which left 187 sacks for appellant. Appellee, however, remitted the one-fifth for water rent, 74 sacks, which added to the 187 sacks, made the amount actually received by appellant for 1900, 261 sacks, disregarding fractions. Deduct this from the 600 sacks he ought to have made, shows a loss to appellant of 339 sacks, which at $3.00 per sack was worth $1,017. For 1901 the result would be, crop which should have been made 1,450 sacks, of which appellant's share would have been 725 sacks; crop made 1,100 sacks, of which appellant received one-half or 550 sacks, making appellant's loss 175 sacks, which at $3.00 per sack was worth $525. The value of appellant's shares of the crop lost for 1900 and 1901 was $1,542 according to the finding of the jury. From this should be deducted the additional cost of making and harvesting the additional crops that would have been made if the crop had been watered, of 826 sacks for 1900 and 350 sacks for 1901, a total of 1,176 sacks.

As we have seen, the instructions of the court to the jury did not submit this issue, and they were not required to say how much this additional cost amounted to. Obviously, the reply that the cost of raising and harvesting a crop of rice per acre was $10 did not answer the question that was required to be answered, or enable the court from this information alone to apply to the facts found the proper measure of damages, as this $10 per acre included the entire cost of the full crop, which included the cost of the crop in fact made.

The proper special issue not having been submitted the judgment will still be sustained, if from the evidence such an answer to the question can be found as will sustain the judgment. The only evidence on this issue to be found in the record is the testimony of appellant and of appellee's witness Simmons. Taking the testimony of Simmons as most favorable to appellee, it is found that he testifies that "it would cost about $4.00 per acre to get the crop planted and in good shape, and as to harvesting it, it would depend upon how much you raised, and the kind

of deal you made, and how much you had to pay for labor. If you had a crop of, say, ten or twelve sacks per acre at Raywood it would cost, I think, to cut rice, stack it, thresh it, haul to the thresher and put it in sacks, about $8 per acre. A good crop would cost from $10 to $12 per acre."

If we consider that the $4 per acre was the cost of planting and cultivating up to harvesting, which amount it had cost appellant for the crop raised by him, and that $12 per acre was the entire cost of planting, cultivating and harvesting, this would leave, as the witness testifies, $8 per acre for the expense of harvesting and putting into sacks. As the jury found that a full crop, if watered, would have been 10 sacks per acre for each year, this would have been made not more than 80 cents per sack additional cost of planting and harvesting the crop which appellant would have made and did not make. As he did not have to pay out this, and would have had to pay it out if the full crop had been made, 80 cents per sack on the entire amount of shortage would have to be deducted to show the net loss to appellant. This shortage for both years was, as we have seen, 1,176 sacks. Eighty cents per sack upon this would be $940, which amount deducted from the total value of appellant's share of the shortage in the crops, $1,542 would leave a net loss to appellant of $601.20, instead of $366, the amount of the judgment. Appellant testified directly as to what the additional cost of a full crop would have been, which would have made his net loss much larger. Appellant in his brief has explained the manner in which the trial court arrived at the amount of the judgment, that is, by deducting $1.00 per sack from the market value of the 1,176 sacks shortage as the additional cost to appellant of harvesting the full crop. This finding is not sustained by anything in the evidence. As the case was submitted upon special issues the jury should have been required to say specifically what the additional cost would have been of planting, cultivating and harvesting such a crop as appellant would have made over and above what the crop that was made cost, but the judgment would not be disturbed on that account if any evidence could be found upon this issue that would sustain the judgment for the amount for which it was rendered. Appellee in its brief has not attempted to explain how this result was arrived at. The court seems to have applied the proper measure of damages, but in doing so to have arrived at an incorrect result.

We think the judgment should be reversed and a new trial granted, and it is so ordered.

*Reversed and remanded.*