## CITY OF HENDERSON v. FIELDS.
### (No. 1740.)

(Court of Civil Appeals of Texas. Texarkana. April 9, 1917. Rehearing Denied April 12, 1917.)

1. **TRIAL ☞361—SPECIAL FINDINGS—SETTING ASIDE—DEFECTS.**
Where, in an action for injuries, the jury's special findings, properly signed by the foreman, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1977, found defendant guilty of negligence, which without fault on plaintiff's part proximately caused her injury, to her damage in a sum therein specified, and therefore authorized a judgment for her, the failure of the foreman to sign other findings on issues submitted at defendant's request, which were either immaterial, outside the testimony, or a mere repetition of those submitted by the court at its own instance, was not a ground for setting aside the authenticated findings.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 862–864.]

2. **MUNICIPAL CORPORATIONS ☞819(1)—DEFECTIVE STREETS — EVIDENCE — LACK OF FUNDS.**
In an action for injuries caused by falling into a ditch across a sidewalk in a city incorporated in 1911, evidence that a bridge across the ditch would have cost only a few dollars, and that besides its ordinary revenue from taxation the city in 1913, by a sale of bonds, acquired a fund of about $19,000 for use in maintaining its streets, which fund was not shown to be exhausted, would have warranted a finding that the city did not lack funds to place the crossing in a safe condition prior to the accident in 1914.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1739.]

3. **MUNICIPAL CORPORATIONS ☞819(6)—DEFECTIVE STREETS—EVIDENCE—NOTICE.**
In an action for injuries caused by falling into a ditch across a sidewalk at the intersection of two streets, where it appeared that such streets were among those most traveled, and that their intersection was only about a block from the public square, the testimony was sufficient to show that the city had notice of the defect in the street.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1741.]

4. **MUNICIPAL CORPORATIONS ☞788(2)—DEFECTIVE STREETS—LIABILITY—NOTICE.**
Where a city itself directed the digging of a ditch across a sidewalk, and at the time of an accident it was in practically the same condition as when it was opened, the city could not claim ignorance of the defect.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1642, 1652.]

5. **MUNICIPAL CORPORATIONS ☞821(22)—DEFECTIVE STREETS—EVIDENCE—CONTRIBUTORY NEGLIGENCE.**
In an action for injuries caused by falling into a ditch crossing a sidewalk, testimony that after plaintiff fell a man with a lantern came where she was, and assisted in removing her from the ditch, did not conclusively show that she knew she could have procured a light or assistance in crossing the ditch.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1754.]

6. **MUNICIPAL CORPORATIONS ☞821(24)—DEFECTIVE STREETS—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.**
It was not contributory negligence as a matter of law for plaintiff to attempt to cross a ditch which crossed the sidewalk, in the dark, though she knew of the existence of the ditch.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1755.]

7. **TRIAL ☞133(6)—ARGUMENT OF COUNSEL—CURE BY COURT'S ACTION.**
In an action for injuries to a woman, defendant's counsel attempted to impeach her veracity, and one of plaintiff's counsel, in the presence of the jury, stated that, if it was his wife they were endeavoring to so impeach, he would have taken one of defendant's counsel by the throat and shaken him to death. The court promptly reprimanded counsel, instructed the jury to ignore the remark, and in his charge told them not to consider any remarks by the attorneys except such as were proper deductions from the evidence and to disregard all other remarks. *Held*, that counsel's remark, though censurable, did not require a reversal of the judgment.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316.]

8. **EXCEPTIONS, BILL OF ☞31—NECESSITY OF APPROVAL BY TRIAL JUDGE.**
Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2063, requiring the party taking a bill of exceptions to reduce it to writing and present it to the judge for his allowance and signature, alleged misconduct of counsel could not be reviewed where the bill of exceptions presenting the matter was not approved.
[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 36.]

9. **APPEAL AND ERROR ☞1165—REVERSAL—FAILURE TO OBTAIN BILL OF EXCEPTIONS.**
A judgment would not be reversed on the ground that the death of the trial judge deprived appellant of a bill of exceptions approved as required by statute, where it appeared that the trial judge was not disabled to approve the bill for five weeks after the denial of the motion for a new trial and the adjournment of the term, and no excuse for the failure to secure his approval within that time was shown.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4522.]

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Action by Miss Dotie Fields against the City of Henderson. Judgment for plaintiff, and defendant appeals. Affirmed.

N. B. Morris, of Palestine, C. L. Brachfield, of Henderson, and T. J. Arnold, of Houston, for appellant. R. T. Jones and Jas. Y. Gray, both of Henderson, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

WILLSON, C. J. This was a suit by appellee against appellant for damages for personal injury she suffered as a result of a fall she sustained in attempting to cross a ditch situated about a block from the public square within appellant's corporate limits. The appeal is from a judgment in her favor.

The ditch referred to ran from north to south on the west side of High street, and crossed the sidewalk on the north side of East street. It was 2 or 3 feet deep, about 1 foot wide at the bottom, and 3 or 4 feet wide at the top. About 2 o'clock of the morning of April 4, 1914, appellee, in going from the home of a sick neighbor on East street, west of High street, to her own home on East street, east of High street, fell into the ditch, and as a result of the fall was seriously and permanently injured. Appellee was accompanied by Mrs. Wood and Mrs. Crim. They were on the sidewalk on the north side of East street. They knew the location of the ditch, and that they would have to cross it to get to their homes, but on account of the darkness could not see it as they approached it. They were proceeding carefully, holding each other's hands, appellee a short distance in advance of her companions, when they reached the ditch. Testifying as a witness, appellee said:

"It was dark. You couldn't see your hand before you, couldn't see anything in front of you, and the only way we could get along was by staying as close together as we could. We were feeling our way along the best we could to get to this place, and just before we got there I told Mrs. Wood to be careful, because it would be terrible (she was a large woman) if she fell in that hole, or ditch rather; and as I went to speak to her about it, I still had hold of her hand, I got to the edge of the ditch, just feeling along, and I went down. Just as my foot went down and in the ditch I went down; that seems to be as near as I can recollect—suspended in the air. I don't think I ever hit the bottom until I hit it finally in falling."

The ditch was dug by employés of appellant about a year before the accident occurred. Plank thrown across it had served as a bridge for crossing over it, but some time before the night when appellee fell the plank had been removed, and the only way it could be crossed at the time she was injured was to step or jump across or to go down one of its sides and up the other.

On special issues submitted to them the jury found: (1) That appellant was negligent in permitting the ditch to be in the condition it was in; (2) that its negligence was the proximate cause of the injury to appellee; (3) that the injury she suffered—broken hip bone—was permanent; (4) that $4,000 would compensate her for the injury; (5) that appellee was not guilty of contributory negligence; (6) that appellant had notice of the condition of the ditch before the time appellee was injured; (7) that the condition of the ditch was not "caused by any other person or persons except officers of the city government."

It seems that the jury also found on issues submitted to them at appellant's request: (1) That appellee knew of the condition of the crossing; (2) that there was no better and safer way than the one she chose to go to her home; (3) that the condition of the ditch was not caused by some other person than those of the appellant's officers without its knowledge and consent; (4) that before the accident occurred, "taking into consideration the length of time it had been incorporated, the number, length, and condition of the sidewalks to repair, and the amount of funds it had with which to make the repairs," appellant had not used ordinary care to put the sidewalk appellee was walking upon in an "ordinarily safe condition" at the place where it crossed the ditch; (5) that the condition of the ditch was not due to unusually heavy rains; (6) that appellee at the time she fell was not suffering from any physical defect which was the proximate cause of her falling. We say it seems that the jury made the findings just cited. We find answers to the questions submitting the issues written on the papers containing the requests to submit them and following the questions, indicating such findings to have been made; but the answers do not appear to have been signed by the foreman of the jury, or otherwise identified as answers made by them to the questions, except that it was recited in the judgment that the answers were made by them. On the findings the court rendered judgment in appellee's favor against appellant for $4,000.

[1] It is insisted that the findings should be "wholly set aside, disregarded, and held for naught," because the answers written on the papers containing issues submitted at appellant's request were not signed by the foreman of the jury. It has been held that the statute (article 1977, Vernon's Statutes) which requires the verdict to be signed by the foreman is directory, and that an objection to the verdict on that ground, made after it was received and the jury discharged, comes too late. Dunlap v. Milling Co., 43 Tex. Civ. App. 269, 95 S. W. 43; Crosby v. Stevens, 184 S. W. 705. Appellant's objection that the findings in question were not so signed was made for the first time in its motion for a new trial in the court below. But if it appeared that appellant had promptly objected to the verdict on the ground stated, and that its objection had been overruled, it would not be a reason for setting aside the findings of the jury on other issues submitted to them. The findings of the jury on such other issues were signed by the foreman of the jury, and covering, as they did, all the material issues made by the testimony, were a sufficient basis for a judgment. The fact that it did not appear in the way the statute directed that the jury had made findings on immaterial issues, or on issues not made by testimony submitted to them at

appellant's request, or on issues which were a mere repetition of those submitted to them by the court at his own instance, would not be a reason for setting aside findings made by them and authenticated as directed by the statute on the material issues of the case. As shown in the statement above, the findings made by the jury and properly authenticated were that in permitting the ditch to be in the condition it was in at the time appellee fell into it appellant was guilty of negligence which, without fault on her part, proximately caused the injury she suffered, to her damage in the sum of $4,000. These findings authorized the judgment rendered by the court.

Appellant insists further, however, that the findings that it was guilty of negligence and that appellee was not guilty of contributory negligence proximately causing the injury were without the support of evidence.

[2-4] Appellant does not deny that it owed to appellee the duty to use ordinary care to keep the sidewalk where it crossed the ditch in a reasonably safe condition for the use she was making of it at the time she was injured; but, in support of its contention that the evidence was not sufficient to show it had failed in the performance of that duty, insists that it was not incorporated until 1911, and argues that the time intervening between the date of its incorporation and 1914, when appellee was injured, was not sufficient in which to enable it to provide funds for the purpose and place the crossing in a safe condition. It has been held in this state that a lack of funds on the part of the municipality, in the absence of proof showing it had exhausted its means for providing same, as was the case here, is not a defense to a recovery against it in a suit like this. City of Dallas v. Strayer, 73 S. W. 980; City of McKinney v. Brown, 81 S. W. 88. But, if the law were otherwise, appellant failed by evidence to show such a lack of funds. On the contrary, a finding that it did not lack same would have been supported by evidence. It appeared that a bridge across the ditch could have been constructed by the expenditure of a few dollars, and it further appeared that besides its ordinary revenue from taxation appellant in 1913, by a sale of bonds, acquired a fund of about $19,000 for use in maintaining its streets, and it did not appear that this fund had been exhausted. Appellant argues, further, that it appeared that the crossing had been in the condition it was in at the time appellee fell "for months and months" before that time, during which no one was injured by falling into the ditch, and that therefore it had a right to assume it was reasonably safe. If the law was that a municipal corporation could not be held to be guilty of negligence because of defects in its sidewalks and streets until some one was thereby injured, the contention would be a tenable one. But such is not the law. Such a corporation owes to persons using its sidewalks for the purpose appellee was using the one in question the duty to exercise care to maintain same in such a condition as renders them reasonably safe for such use. Appellant further insists in support of its assignment that it did not appear that it had notice of the condition of the crossing over the ditch. We think the testimony was amply sufficient to show that it had such notice. It was shown that the crossing was only about a block from its public square, and that High and East streets were among its streets most traveled. Moreover, it appeared that the ditch at the crossing was in practically the same condition it was in when it was opened, about a year before the accident happened. Having itself directed the digging of the ditch, and its condition remaining unchanged, appellant could not claim ignorance thereof, if, as found by the jury, it was not reasonably safe in that condition for persons using the sidewalks as appellee was using it.

[5, 6] In support of its contention that it appeared as a matter of law that appellee was guilty of contributory negligence, and therefore that the finding of the jury that she was not was wrong, appellant refers to testimony showing that she knew of the condition of the crossing and the risk she incurred in attempting to cross it in the dark, and asserts it further appeared that she knew she could easily have procured a light or assistance which would have enabled her safely to cross the ditch. Appellant does not refer to testimony showing appellee knew she could have procured such a light or assistance, and we have found none in the record. The testimony referred to by appellant to the effect that after appellee sustained the fall a man with a lantern came to where she fell, and assisted her companions in removing her from the ditch, certainly did not conclusively establish that she possessed such knowledge. The fact that appellee, with knowledge of its condition, attempted to cross the ditch as she did, was not sufficient to convict her of contributory negligence as a matter of law. "The mere fact," said the author of the article on "Municipal Corporations" in 28 Cyc. 1432,

"that one, knowing of a defect or obstruction, travels on a street or public way after dark, although it is a circumstance tending to show negligence, does not per se constitute contributory negligence, particularly where the knowledge was acquired some time before, or the route selected by him was the one ordinarily traveled by the public. All the law requires is that he exercise ordinary care commensurate with the danger of which he has knowledge, taking into consideration the fact of darkness."

[7] It appears from a bill of exceptions that, while Mrs. Wood was testifying as a witness, R. T. Jones, one of appellee's counsel, interpreting the action of appellant in having before that time placed her husband on the stand to prove the circumstances under which she, at the request of appellant's counsel, made a certain statement to them

about the accident as an effort to impeach her veracity, declared, in the presence of the jury, that if it was his wife appellant's counsel were endeavoring to so impeach he would have taken one of them by the throat and "would have shaken him to death." The conduct of counsel in making the statement was, of course, censurable; and the court, as he should have done, promptly reprimanded counsel and instructed the jury to ignore the remark., And in a charge to the jury the court told them not to consider—

"any remarks made by the attorneys in this case except such as are proper deductions from the evidence as permitted to be introduced by written and verbal statements of witnesses, and all other remarks must be disregarded by you as having no place, force, or effect in your deliberations in determining what your answers to the several issues shall be."

Under such circumstances, and in view of the fact that the trial court was in a better position than we are in to determine whether appellant's rights were prejudiced by the conduct complained of or not, and by overruling the motion for a new trial determined they were not, we do not think this court should reverse the judgment because of the misconduct complained of.

[8, 9] In the same assignment in which complaint is made of the conduct of attorney Jones, just referred to, is a complaint based on the argument to the jury of J. Y. Gray, another one of appellee's counsel. The bill of exceptions presenting this complaint does not appear to have been approved by the court below. On the contrary, it appears that the judge who tried the case died before the bill was prepared and presented to him, and that his successor refused to approve it because appellee's counsel contended that Mr. Gray in his argument did not make the statements attributed to him by the bill. As an approval of the bill by the judge of the trial court was essential to its validity (article 2063, Vernon's Statutes), the matters complained of cannot be reviewed here. Nor can we sustain the contention made that the judgment should be reversed because, as appellant insists is true, it was deprived by the death of the judge who tried the case of a bill of exceptions approved as required by statute. It appears that the judgment was rendered July 27, 1916, that appellant's motion for a new trial was overruled the same day, and that the court adjourned for the term July 29, 1916. It further appears that the judge who tried the case was well and transacting his official duties until September 5, 1916. It thus appears that appellant had about five weeks from the time the cause was tried until the judge who tried it became disabled in which to secure his approval of a proper bill. That appellant did not within that time obtain from the judge the approval of such a bill as it may have been entitled to we think is not excus-

ed by anything appearing in the record before us.

Other objections interposed to the judgment have been considered, but are overruled because in our judgment none of them presents a reason why the judgment should be reversed.

The judgment is affirmed.