LAYBOURN v. BRAY & SHIFFLET.    (No. 1437.)

(Court of Civil Appeals of Texas. Amarillo. April 23, 1919. On Motion for Rehearing by Appellant, May 21, 1919.)

1. ATTORNEY AND CLIENT ☞166(1)—GOOD FAITH—BURDEN OF PROOF—EMPLOYMENT CONTRACT.

Attorneys, suing for compensation, are not required to prove that they acted in good faith; the rule that burden of proving good faith is upon attorney having no application to a mere contract whereby attorney's compensation is fixed upon employment.

2. TRIAL ☞365(1)—SPECIAL ISSUES.

In attorneys' action for compensation, special issues submitted as to whether attorneys in entering into employment contract made and breached agreement not to accept employment from, or be under influence of, party being sued by client, held to have been submitted on pleadings of client setting up breach of contract, and not to refer to issue setting up fraud and violation of fiduciary relationship.

3. TRIAL ☞365(1)—SPECIAL ISSUES—CONSTRUCTION.

In attorneys' action to recover fee, defended upon ground of attorneys' fraud in procuring employment contract and their lack of good faith in their relations to client, held, that special issue did not require client to prove actual fraud instead of merely lack of good faith and scrupulous fidelity in the litigation.

4. TRIAL ☞352(5)—SPECIAL ISSUES.

In attorneys' action to recover fee, where answer alleged fraud in procuring employment and also in obtaining abandonment of original contract and the making of contract sued on, special issue as to whether attorney made fraudulent representations to procure employment and the contract sued on was not erroneous for intermingling original contract and subsequent contract.

5. ATTORNEY AND CLIENT ☞143—CONTRACTS BETWEEN—VALIDITY.

Contracts between attorneys and client are scrutinized closely because of the relation existing between them, but where contract is reasonable, and where attorney has taken no unfair advantage and has made full and fair disclosure of facts, client is liable thereon.

6. ATTORNEY AND CLIENT ☞143—CONTRACTS —ABROGATION—FRAUD.

Attorney and clients have the right to abrogate original contract of employment and enter into new contract in absence of fraud or undue influence on part of attorneys exercised by reason of their relation to client.

7. TRIAL ☞351(5)—REQUESTS—SPECIAL ISSUES.

In attorneys' action to recover fee under contract entered into upon abandonment of original contract, defended upon ground of fraud in procuring the contract, refusal to submit issues as to whether attorneys, in making contract, concealed facts from client and failed to exercise good faith, held not error in view of issues submitted and instructions given.

8. TRIAL ☞215—SPECIAL ISSUES—GENERAL CHARGE FOR VERDICT.

Where case was submitted to jury on special issues, a general charge for a verdict if certain facts be found true would have been improper.

9. TRIAL ☞323—JURY—SIGNING OF VERDICT—WAIVER.

Where all members of jury declared the verdict to be the one agreed to by them, the formality of signing verdict was waived; the verdict not being affected by fact that foreman was afterwards required to sign it.

10. APPEAL AND ERROR ☞1033(3)—REVIEW —HARMLESS ERROR.

Admission of letter from defendant to plaintiffs containing declarations more favorable to defendant than against him was not prejudicial to defendant.

11. APPEAL AND ERROR ☞1078(4)—BRIEF— ISSUES AND CHARGES.

Assignments complaining of issues and charges not set out in brief will be treated as waived.

On Motion for Rehearing by Appellant.

12. ATTORNEY AND CLIENT ☞143—CONTRACTS—ABANDONMENT OF SUIT.

Where a suit which attorneys had agreed to prosecute was abandoned by mutual agreement, attorneys were not required to defend the client in action brought against him by adverse

party; and a contract to so do for stipulated fee was based on a good consideration.

Hall, J., dissenting.

Appeal from District Court, Wheeler County; W. R. Ewing, Judge.

Suit by Bray & Shifflet against W. A. Laybourn. Judgment for plaintiffs, and defendant appeals. Affirmed.

Crudgington & Works, of Amarillo, for appellant.

Kimbrough, Underwood & Jackson, of Amarillo, for appellees.

HUFF, C. J. This is the second appeal to this court. The former appeal will be found in 190 S. W. 1159. The appellees, Bray & Shifflet, sued appellant, Laybourn, upon a contract of employment as attorneys to represent and prosecute certain litigation between appellant and the Spaulding Manufacturing Company in the state of Iowa, which contract is in writing and dated September 30, 1912, executed and signed after the case had been tried in the lower court, but afterwards appealed, reversed, and sent back for new trial. The contract stipulated, among other things, that appellees had charged appellant $1,000 for their services, $500 thereof paid by note, the remaining $500 to be paid on the expiration of the statutory period for appeal of the case, and, if appealed, $100 additional for services to be rendered in the Supreme Court and $200 additional in the event of reversal of the judgment, and retrial in the lower court. Recovery was sought on the $500 note and the other $500 stipulated for after the time for appeal and the $100 for services rendered in the Supreme Court. It is alleged that the appellees were employed to establish appellant's claim against the Spaulding Manufacturing Company for the sum of $4,124.13, upon which suit was filed in Poweshiki, Iowa; that about the same time the Spaulding Manufacturing Company entered suit against appellant to recover about the same sum and in the same court; that thereupon appellant dismissed his suit against the company, and by proper pleadings denied that he owed the company the amount sued for or any part thereof, setting up his claim of the amount due him and the further sum of $295.87 for caring for certain property. The amount sued for by the company was claimed to be due it by appellant for moneys received by him belonging to the company while acting as agent for the company in Texas, appellant claiming the amount so retained by him as due him for commission on sales, and which sum he had retained and applied on the amount due him. Upon reversal of the case by the Supreme Court of Iowa and upon its return to the district court, where the suit originated, the Spaulding Company dismissed its suit against ap-

pellant, and it is alleged under the law of that state the dismissal carried with it a determination of appellant's claim against the company. There are two other counts in the petitions, Nos. 6 and 7, by which appellees pleaded in the alternative to recover on the original contract, and by the seventh count, if for any reason they should not be able to recover on either contract, that they recover the value of their services, which they allege to have been of the reasonable value of $1,500.

The answer of appellant, as well as the petition of appellees, is quite voluminous, but we think it may be stated that the first ground for defeating the contract of employment alleged by appellant is that appellant was desirous of securing attorneys not connected with the Spaulding Company at that time, and would not be during the course of the litigation then in hand, and that the appellees represented that they were not then so employed by Spaulding Company, and agreed that they would not accept employment as such during the pending litigation; that appellees breached their agreement and thereafter accepted employment from the company. It is also alleged that appellant was induced to enter into the contract sued upon dated September 30, 1912, by "misleading, false, and fraudulent representations, statements, and conduct" of appellees and to employ the appellees as attorneys and to execute the contract and note upon which this suit is based. One of the grounds of fraud was, as alleged, that Spaulding, some time in September, 1912, retained appellees as the company's attorneys, which was concealed from appellant; that one of the attorneys offered to confess judgment for Spaulding, but afterwards the case was tried in which appellant obtained judgment; that the contract was executed a day or two after appellant obtained judgment, was secured from appellant upon the definite and positive assurance that the record was in such condition as to assure affirmance and would be affirmed by the Supreme Court, and appellant fully protected thereby; that appellees intended thereby to secure an unjust advantage of appellant. There is a long recital of acts on the part of appellees in order to show acts and conduct in connection with the Spaulding Company to prevent a recovery on the part of appellant and to interfere with other employment secured by appellant with another company. It is also alleged that in obtaining the contract the appellees took advantage of their relation to him and superior knowledge as lawyers to obtain the contract without making that full and complete statement of facts that is required of an attorney dealing with a client, and it is again alleged that the contract was obtained "by the fraud and deception of plaintiffs." It is alleged substantially by both parties that the original

contract of employment was made March 13, 1909, and reduced to writing; that thereby appellees were to receive one-third of whatever sum they might recover in the suit above the sum of $2,000. Appellant alleged during the progress of the suit and after certain demurrers were sustained appellees became dissatisfied with their contingent compensation, and also, taking advantage of a favorable verdict, induced appellant to make the contract of September 30, 1912; that under their original contract appellees would have been entitled to only $850. We believe this will be a sufficient statement of the pleadings to understand the issues submitted by the trial court. As there appears to be no complaint that the answer of the jury to the issues submitted or the judgment of the court are without sufficient evidence to support them, and as we conceive it, under the assignments, it will only be necessary to set out the charge and issues together with the jurors' answers, which are as follows:

"(1) An attorney must act toward his client with the utmost good faith and fidelity, and must make known to him the exact status, so far as he is able, of all matters concerning which he is employed.

"(2) Fraud is never presumed, and must be established by preponderance of the evidence by the party alleging same as grounds for avoidance of a contract. ·

"(3) Expressions of opinion as to what could or would be done in the future are not such false representations as to entitle one to avoid a contract on the ground of fraud.

"(4) The burden of proof is upon the plaintiff to prove the material allegations in their petition by a preponderance of the evidence, by which is meant the greater weight or degree of credible testimony.

"(5) This case is submitted to you upon special issues and you will answer the following questions:

"Question 1. Did plaintiff Bray promise Laybourn in discussing with him the execution of the contract of March 13, 1909, that he, the said Bray, would not accept employment from or be under the influence of the Spaulding Manufacturing Company during the progress of any litigation that might grow out of the differences of Laybourn with the Spaulding Manufacturing Company? A. No.

"Question No. 2. If you have answered the foregoing in the affirmative, then did said Bray breach his promise to the defendant Laybourn? A. ——.

"Question No. 3. Was the contract of March 13, 1909, at any time mutually abandoned by the parties? A. Yes.

"Question No. 4. Did Bray make misleading, false, and fraudulent representations and statements to Laybourn to induce Laybourn to employ him as his attorney and to enter into the contract of September 30, 1912? A. No.

"Question No. 5. Was the contract of September 30, 1912, reasonable, fairly made, and entered into between the parties after an honest, full, and fair understanding of all material matters relating thereto? A. Yes.

"Question No. 6. Did Laybourn, after he had full knowledge of all the material facts and circumstances concerning the manner in which plaintiffs had conducted his litigation with the Spaulding Manufacturing Company, agree to pay plaintiffs according to the contract of March 30, 1909? A. Yes."

On these findings the court rendered judgment for appellees for the sum of $1,356.19, which is the amount called for in the contract of September 30, 1912, together with interest thereon up to the date of the judgment.

[1] Appellant presents assignments to issues Nos. 1 and 2, which assignments assail the issues because it is asserted the court placed the burden on appellant to show fraud on the part of appellees in securing the first contract. In other assignments it appears to be the contention of appellant that it rested with appellees to show the utmost good faith in accepting the employment as an attorney and in entering into a contract for compensation. This rule does not apply until after the relation of attorney and client exists. It would be a harsh rule if an attorney could not recover a fee contracted to be paid under employment until he shows he acted in good faith and disclosed fully to his proposed client all of the conditions before he knew them or could positively know them. The rule does not apply to a mere contract whereby the attorney's compensation is fixed upon employment. Rabb v. Goodrich, 46 Tex. Civ. App. 541, 102 S. W. 910; Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983; Cooley v. Miller, 156 Cal. 510, 105 Pac. at page 986; Elmore v. Johnson, 143 Ill. 513, 32 N. E. 413, 21 L. R. A. 366, 36 Am. St. Rep. 401; Ward v. Yancey, 78 Ill. App. 368.

[2] The assignments complaining of issues 1 and 2, however, are not tenable on other grounds. The issue submitted in No. 1 was: Did Bray promise Laybourn, in securing the contract of March 13, 1909, that he would not accept employment from or be under the influence of the Spaulding Manufacturing Company during the progress of any litigation that might grow out of the differences of Laybourn and Spaulding? The jury found there was no such promise. Issue No. 2 was only to be answered in case the jury answered issue No. 1 in the affirmative. The jury did not answer issue 2, manifestly for the reason that they were not required to do so under the directions of the court and their answer to the former issue. It is evident these two issues were submitted on the pleadings of appellant setting up a breach of the contract, and do not refer to the issue setting up fraud and the violation of the fiduciary relationship.

[3, 4] The sixth and eleventh assignments assert error in the submission of issue 4, because it placed the burden on appellant to prove affirmative fraud, while he was only required to show a lack of good faith and

scrupulous fidelity as attorney in the litigation; that the question was misleading and confusing, in that it intermingled the original contract and the latter contract at the time the relation of attorney and client existed. In answer to issue 3 the jury found the contract of March 13, 1909, was mutually abandoned by the parties, and also found in answer to the fourth issue that Bray did not make misleading, false, and fraudulent representations and statements to induce Laybourn to employ him as his attorney and enter into the contract of September 30, 1912. The issue did not put the burden on appellant, as asserted in the assignments. We do not think there was error in submitting issue No. 4, as to whether there was fraud on the part of appellees. The answer, paragraph 9, with some 17 subdivisions thereof, charge fraud in the inception of the employment and in procuring the contract sued on. The court, as nearly as possible, submitted the issue as pleaded by the appellant. If there was intermingling, as asserted by the assignment, in the issue, it is a clear reflex of the intermingling by the answer. There could be no error in submitting the question of fraud in obtaining the contract, because it is clearly charged in the answer to have induced the contract. If the jury had found fraud, the court doubtless would have refused a recovery. The appellant, by its answer, did not see proper to rely alone on good faith in discharging the trust and confidence arising from the relation of attorney and client, but also he alleged actual and active fraud on the part of appellant in inducing the employment and in making the contract sued on.

The seventeenth assignment asserts error in the fifth issue, in that. it is asserted the court did not place the burden on appellee of showing the utmost good faith.

The fourth and fifth assignments assert error in refusing the ninth requested issue, which is:

"Did or did not plaintiff, in discussing with defendant the execution of the contract of September 30, 1912, conceal from defendant anything relative to said contract known to them to be material thereto from defendant's standpoint?"

And also in refusing specially requested issue No. 19:

"Did plaintiff exercise the utmost good faith and scrupulous fidelity toward defendant in connection with the execution of the contract of September 30, 1912?"

It will be perceived that the trial court instructed the jury that an attorney must act with the utmost good faith and fidelity and must make known to his client the exact status, so far as he is able, of all matters concerning which he is employed. He also told the jury that the burden was upon plaintiff to prove the material allegations of the petition. In connection with this charge, the court, by issue, asked them:

"Was the contract of September 30, 1912, reasonable, fairly made, and entered into between the parties after an honest, full, and fair understanding of all material matters relating thereto?"

We do not believe the jury would fail to perceive, in making the contract, that appellees must have acted with the utmost fidelity to appellant; that the contract must have been reasonable and fairly entered into and upon an honest, full, and fair understanding. The jury could have found no concealment of any material matter relative thereto after they found it was entered into upon an honest, full, and fair understanding. It could not be full if part of the material matter was concealed.

[5-7] The nineteenth issue requested, it does not appear to us, would have added any force. The jury were told the appellees must act with the utmost good faith, and in the light of that charge they found that the contract between the parties was reasonable, fairly made and entered into, and only after an honest, full, and fair understanding. We believe this was all that was necessary to submit the issue to the jury. It would appear that the issue as submitted was founded by the court largely upon the language used by this court on the former appeal. 190 S. W. 1160. Contracts between attorneys and client are scrutinized closely because of the relation existing between them, and when it is shown no unfair advantage is taken—that is, that the attorney had acted honestly after full and fair disclosure—we cannot see why the client should not be liable on his contract when it is reasonable, as found by the jury in this case. The parties had the right to abrogate their former contract in the absence of fraud or undue influence on the part of the attorneys, exercised by reason of their relation to appellant as such. There is no assignment asserting that the latter contract was more advantageous to the appellees than the former or no contention so presented in this court as to require a discussion of that question. We think from the facts shown by the record that there was additional work required after the employment; that is, by the institution of another suit which was filed and evidently required additional labor. Headley v. Good, 24 Tex. 232; Clarke v. Faver, 40 S. W. 1009. There is a discussion by appellee in this court by which they seek to show that the compensation was no more under the new than the old contract. This we shall not undertake to determine. The jury found under the facts of the case that the new contract, as entered into, was reasonable. This finding is not attacked by a specific assignment, and only, if at all, by

argument or influence. We believe there was no reversible error in refusing the two issues requested and in issue No. 5 as submitted, and we do not think it subject to the criticism offered by the assignment.

[8] The third assignment asserts error in refusing the seventh special charge. This was a general charge for a verdict if certain facts were found true. The case having been submitted on special issues, such a charge would have been improper if it had been otherwise correct, which we are inclined to think it was not.

The eighteenth and nineteenth assignments seek a reversal on the ground that the verdict was not signed by the foreman of the jury. It appears by the bills of exceptions and the trial court's qualification thereof that the court submitted the case on special issues; that after each issue the jury wrote its answer upon the same sheet of paper upon which the court submitted the issue. After the jury returned their verdict, the court had each issue read over to them, together with their answer thereto, and inquired as to whether that was their verdict, to which the jury responded in the affirmative. There appears to have been no objection made at the time, but afterwards the court had the foreman recalled and had him sign the same as foreman. It has been held repeatedly in this state since Dunlap v. Raywood, 43 Tex. Civ. App. 269, 95 S. W. 43, that the statute as to signing the verdict by the foreman of the jury is directory only, and, if properly received, will not require it to be set aside. Railway Co. v. Jones, 178 S. W. p. 861; Crosby v. Stevens, 184 S. W. 711; Calvin v. Neal, 191 S. W. 791, at pages 793, 794; Barker v. Ash, 194 S. W. 467; City of Henderson v. Fields, 194 S. W. 1004. It is held in the above cases that the objection made after the verdict has been received and the jury discharged came too late.

[9] All the members of the jury declared the verdict to be the one agreed to by them, and in such case the formality of signing is waived. Crosby v. Stevens, supra, and the authority there cited. The mere fact that the trial court afterwards required the foreman to sign the verdict did not affect the verdict returned by the jury into court, and at which time, in response to the court's interrogation, they affirmed it as their verdict.

There was no error in sustaining the objections to the testimony of which complaint is made in the twentieth, twenty-first, and twenty-second assignments.

[10] We think there was no error shown in permitting the appellees to read the letters of appellant forwarded to them, of which complaint is made in the twenty-third assignment. The letters were not wholly propositions of compromise, but consisted of certain declarations which, as we conceive it, were more favorable to appellant than against him. No injury resulted to him, and no error is shown in their admission.

[11] The twenty-fifth, twenty-sixth, and twenty-seventh assignments complain at the action of the court in refusing certain issues and charges. These issues and charges are not set out in the brief, but we are referred to the transcript. We do not think the assignments properly briefed. They will be treated as waived.

Under the twenty-eighth assignment there is no statement of what the evidence was which was objected to on cross-examination. Under the statement made in the brief it would appear that the cross-examination of appellant was directed to some of the grounds urged by him in his answer; at any rate, no error is pointed out by the assignment or statement.

There are many assignments which appear to raise the grounds discussed by us heretofore, but which are not specifically mentioned in this opinion. All the assignments are therefore overruled. We believe a rehearing should be granted in this case, and that our former judgment should be set aside reversing the judgment of the trial court, and that the judgment of that court should be affirmed; and it is so ordered.

HALL, J. (dissenting). I am unable to agree with the majority in the disposition made of this appeal. The rule that a party is entitled to have submitted to the jury trying his case every material issue raised by his pleadings and the evidence, and that the failure of the court to so submit such issue when duly requested is a serious and reversible error, is too fundamental to require citation of authorities in its support. In his first amended original answer appellant, Laybourn, alleged:

"(7) That during the progress of said preliminary development of said cause, on demurrers and otherwise, in about May, 1911, said Bray became dissatisfied with their said contingent compensation, and upon said Bray's expressing a fear that he would never receive anything for his work, and would incur considerable expense under said contingent fee arrangement, on account of said demurrers being sustained, and at his solicitation, defendant guaranteed him that he should not lose anything on account of said contract, whereupon, on or about —— day of May, 1911, said Bray charged this defendant, so he has since been informed, with the sum of $500 as attorneys' fees, making an entry of that amount on his books, and afterwards, on or about the 30th day of September, 1912, after said cause had been tried, said Bray called defendant's attention to said charge of $500 and another charge of $500 which he claimed they had also charged him in connection with said litigation.

"(8) That under said original fee arrangements of one-third above $2,000 recovery said attorneys would have been entitled to about $850, provided and in case the judgment rendered in

said cause in defendant's favor against said Spaulding Manufacturing Company on or about September 28, 1912, had been sustained and affirmed by the higher court, it being specially provided in said original contract of employment that said contingent fee of one-third above $2,000 recovery should be payable when all litigation growing out of said matters was ended.

"(9) That this defendant was induced by the misleading, false, and fraudulent representations, statements, and conduct of the said Bray to employ him as his attorney to continue the said Bray in his employ as his attorney in said matter, and to enter into the contract of date September 30, 1912, substantially copied in plaintiff's pleadings, and to execute the note mentioned therein and the renewal note substantially copied in plaintiff's pleadings of September 30, 1913, to the Merchants' National Bank of Grinnell, in this: * * *

"(e) That said contract of date September 30, 1912, was executed a day or two after the return of said verdict, said Bray taking advantage of the condition of defendant's mind, produced by such an apparently splendid result over his offer to confess judgment in the sum of $1,500, to induce this defendant to enter into such contract and agree to pay even more than would have been due under such original fee arrangement in case said judgment should have been upheld by the Iowa courts, said Bray overreaching and misleading this defendant in regard to said proposed compensation, holding out and representing to him that said offer to confess judgment for $1,500 would in fact have been a good and proper settlement of said matters under the law and facts of said case, defendant being ignorant of the law of said cause and dependent entirely upon said Bray for correct and proper advice as to same, he being a practicing attorney and claiming special knowledge of the law and the effect given to certain facts by the law.

"(f) That said contract was so entered into upon the definite and positive assurance of the said Bray that the record of said case was in such condition as to insure affirmance of said judgment and that said judgment would be affirmed and upheld by the higher courts, and defendant fully protected thereunder, not only in the amount of about $4,124.13, which had been sustained as a credit in defendant's favor against said company in said suit, but also in said sum of $295.87, and interest so recovered over against them, said Bray stating and claiming to defendant that there was nothing in the record of the trial of said cause to cause a reversal, he claiming to be specially learned in the law and versed in the proceedings of the higher courts of the said state of Iowa, defendant knowing nothing of such things except as stated to him by said Bray, and said Bray intending thereby to secure unjust advantage of defendant as hereinafter more fully shown. * * *

"(i) Defendant further shows that he has reason to believe, and does believe, based upon the above-stated facts and the acts and conduct of said Bray in connection with said matters, that he purposely induced defendant to execute said written contract of date September 30, 1912, without making to defendant that full, complete, and honest revelation of all facts known to him that might influence defendant in continuing said employment, and with the then purpose

and intention to be retained as attorney for said Spaulding Manufacturing Company, knowing that defendant had employed and relied upon him as being independent of any and all of the influences of said company, and that said Bray feared that on a revelation of his connection with said company to defendant he would seek to avoid paying said compensation, the said Bray thereby intending by having this defendant so bound by said written contract a negotiable note therein mentioned to enforce collection of same, notwithstanding any such dissatisfaction on the part of defendant or his efforts to avoid such payment, plaintiff soon thereafter transferring said note to the Merchants' National Bank of Grinnell, Iowa. * * *

"(o) That if defendant had known at the time of the execution of said contract of date September 30, 1912, and at the time of the renewal of the note therein mentioned, the facts hereinbefore stated, of the adverse interests and influences affecting plaintiffs, and of their lack of good faith in representing and advising him, he would not have entered into such contract nor further continued them as his attorneys.

"(p) That said original contingent fee arrangement was abrogated by the arrangement by which defendant guaranteed and agreed to guarantee plaintiffs against loss, in about May, 1912, and by the fixed charge of $500 then made against him and the subsequent definite charge of an additional $500 made by them against him, and said entire fee arrangement was then charged without consideration into said enlarged contract and note of September 30, 1912.

"(q) That said contracts and notes mentioned in said last contract, as well also as renewal of one of said notes, having been so procured, without said Bray making that complete and full statement of facts that is required of an attorney dealing with a client and by the fraud and deception of plaintiffs, are invalid and of no force or effect against defendant, and plaintiffs, having so deceived, misled, overreached, and defrauded defendant in said matter, are not entitled to recover against him on account of the matters affected thereby."

It may be that the pleader was of the opinion that, in addition to his allegations showing the execution of a new contract providing for increased compensation while the confidential relation of attorney and client existed between the contracting parties, he must also show that positive, affirmative fraud entered into its formation. The above excerpts from the amended original answer unquestionably show a state of facts to which the doctrine of uberrima fides applies, and therefore as to this issue the allegations of fraud should be considered as surplusage. In reply to this pleading the appellee alleged that the contract of September 30th was not as favorable to them as the first contract. This allegation was denied by appellant's supplemental answer. In my opinion these pleadings clearly and definitely present the issue of utmost good faith, which I insist was not fairly, if at all, presented by the court's charge. Considering the two contracts in the light of undisputed facts disclosed by the record, the second contract, dated September

30, 1912, while the confidential relation existed, and had existed for more than three years, is unquestionably more favorable to appellees than the first contract, dated March 13, 1909. The contract of March 13, 1909, provides for a contingent fee. By its terms it bound appellant, Laybourn, to pay appellees one-third of whatever sum might be collected for him over and above $2,000. While no amount was actually collected as the result of the litigation, Laybourn was permitted to retain $4,124 of the funds already in his hands held by him as an agent of the Spaulding Company. This being the fact, he would have owed appellees, under the first contract, only the sum of $708, with interest from the date the judgment in such case became final. The second contract provides for a fee certain of $1,000, $500 paid by note, the remaining $500 to be paid upon the expiration of the statutory period for appeal. It further provides for $100 additional fee in the event of an appeal and $200 more should the judgment be reversed by the Supreme Court of Iowa. The majority opinion states that from the facts shown by the record there was additional work required after the employment. I do not think this finding is sustained by the record. The testimony of Bray shows that a suit was first filed June 22, 1910, by the original law firm of Boyd & Bray, with appellant as plaintiff, against the Spaulding Company, and that on August 22, 1910, Spaulding sued appellant, both actions being in effect for accounting. Bray testified:

"Up to the time our firm changed from Boyd & Bray to Bray & Shifflet neither of said actions had been tried, but several demurrers and motions had been filed and argued. The action brought by W. A. Laybourn against the Spaulding Manufacturing Company was dismissed on the 9th day of January, 1912, by plaintiff. This action was taken after a conversation between Mr. Laybourn and myself wherein I said to him that in my opinion it would be easier to defend the action which the Spaulding Manufacturing Company had brought against him than to prosecute the action which he had brought against the Spaulding Manufacturing Company, both of which actions involved the same transaction. Mr. Laybourn stated to me, in substance, that he entertained the same view that I did with respect to the matter and told me to dismiss the action which he had brought."

While it is true that the judgment in Laybourn's favor was appealed to the Supreme Court, appellees evidently knew this would be done before the second contract was entered into, and they did not testify that when the first contract was made it was not contemplated that the case might not be appealed to the Supreme Court. Their compensation under the second contract would be $1,300, a difference in their favor of nearly $600, and in addition under the first contract their fee was contingent, while under the second it was absolute. Even though the amount of compensation provided in each contract were the same, the fact that the last contract provided for an absolute fee would make it far more favorable to appellees than the first. The evidence of Bray quoted above shows that it would be easier to defend against the action of Spaulding than to prosecute for Laybourn as plaintiff. If any additional labor was required, it was that of changing the petition in Laybourn's action against Spaulding into an answer in the other case—a duty which could have been easily performed by a competent stenographer. The extent of their services would be less by this change. The case had been pending for more than two years when the second contract was entered into, and we should presume that appellees, being diligent and competent attorneys, had their case fully briefed and prepared for trial. Aside from the stenographic work, no other services were required except in the trial of the case and the prosecution of the appeal, and these services were, of course, contemplated at the time of the execution of the original contract in 1909. The law is that such a contract is presumptively without consideration and void, and the burden rests upon the attorney to show that the new contract was fairly made, was reasonable, that no advantage was taken by reason of the confidential relations existing between them, and that the client entered into it with full knowledge. Waterbury v. City of Laredo, 68 Tex. 565, 5 S. W. 81; Kahle v. Plummer, 74 S. W. 786; 2 R. C. L. "Attorneys at Law," §§ 42, 120.

The second contract being presumptively void, the burden of proof was upon appellees—

"to show the fairness of the transaction, in that the compensation provided for does not exceed a fair and reasonable remuneration for the services which have been rendered, or which it was his duty to render. The attorney must show that the contract was free from all fraud, undue influence, and exorbitancy of demand, and it is usually held that by way of establishing its fairness the attorney should show that the contract was entered into by the client freely and with a full understanding as to his rights and as to the effect of the instrument, and that he gave his client full information and disinterested advice." 2 R. C. L. p. 1038, § 120.

It is provided by Vernon's Sayles' Civil Statutes, art. 1984a, that—

"Special issues shall be submitted distinctly and separately, and without being intermingled with each other so that each issue may be answered by the jury separately."

By referring to the charge it will be seen that the first paragraph is an abstract statement of the law governing the duty of attorneys generally to their clients. Admitting that this charge was proper, I insist that it should have been accompanied by a special

issue presenting the point to the jury. Knight v. Southern Pacific R. R. Co., 41 Tex. 406; H., etc., Ry. Co. v. Hartnett, 48 S. W. 775; Dallas Hotel Co. v. Fox, 196 S. W. 647. Appellant requested the court to submit special issues Nos. (9) and (19), as follows:

"(9) Did, or not, plaintiff, in discussing with defendant the execution of the contract of September 30, 1912, conceal from defendant anything relative to said contract known to them to be material thereto from defendant's standpoint?"

"(19) Did plaintiffs exercise the utmost good faith and scrupulous fidelity toward defendant in connection with the execution of the contract of September 30, 1912?"

These issues, if submitted, would have pointedly directed the attention of the jury to the particular facts sustaining the defense of want of utmost good faith divorced from the issue of fraud. If given (which I doubt), this issue is so intermingled with the issue of fraud that I think it resulted in confusing the jury. The nearest approach to a submission of the issue is the fifth special issue, as follows:

"(5) Was the contract of September 30, 1912, reasonable and fairly made and entered into between the parties after an honest, full, and fair understanding of all material matters relating thereto?"

An analysis of this language by a trained legal mind might lead to the conclusion that it embraced the question of utmost good faith, but average jurors are not required to be, and generally are not, trained lawyers. Considered alone, this paragraph conveys the idea that it relates to the question of fraud rather than that of utmost good faith, and, intermingled as it is with charges and issues on fraud, I believe the jury so understood it. The second paragraph of the charge deals with the burden and quantum of proof upon issues of fraud. The third paragraph tells the jury that expressions of opinion do not constitute fraud. The fourth paragraph places the burden of proof as to the material allegations of their petition upon appellees. The first special issue submits the question of appellee's fraud in accepting employment of the Spaulding Company. The fourth issue submits the question of fraud in the formation of the last contract, and the sixth bears upon the issue of ratification by appellant of the alleged fraud of appellees in the formation of the first contract. In framing this issue the court may have intended to refer to the last contract, but it specifically mentioned "the contract of March 30, 1909," which is, to say the least, confusing. I think the effect of the fourth issue is to leave the impression upon the minds of the jurors that, unless Laybourn proved that Bray made misleading, false, and fraudulent representations and statements to him to induce him to sign the last contract, it was valid, when, as a matter of law, it was presumptively void, because made while the confidential relation of attorneys and client existed, and was unquestionably more favorable to the attorneys than the original contract of employment. All these things, when considered with the further fact that no charge was given placing the burden of proving the presumptively void contract to be a valid one upon appellees, should, I think, reverse the judgment, even though appellant neglected to ask a special charge as to the burden of proof upon this issue. For this reason I cannot assent to an affirmance, and believe that the judgment should be reversed under rule 62a (149 S. W. x), in order that the parties by their pleadings may eliminate the issue of fraud in the formation of the first and second contracts, and the case be tried presenting the issue of utmost good faith separately and distinctly to the jury.

## On Motion for Rehearing by Appellant.

HUFF, C. J. We did not think it necessary to make findings of fact in this case, for the reason that there were no assignments assailing the judgment of the trial court or the verdict of the jury on the ground that the evidence did not support them. But, in response to request in the motion to make findings, we find there is sufficient evidence to show that the contract of employment of appellees by appellant, dated the 13th of March, 1909, was to recover the sum of $5,389.20 claimed by appellant to be due him by the Spaulding Manufacturing Company, and as consideration for such services appellees were to have a sum equal to one-third of the amount of the claim which may be collected over the sum of $2,000; that the appellees, in pursuance to this contract, filed suit in the name of appellant against said company for said amount. The Spaulding Manufacturing Company filed an independent suit against appellant for $4,124.13. The appellees represented appellant in that suit, filing an answer setting up the amount due appellant and, as we gather from the facts, $1,500 in excess of the amount claimed by Spaulding. By mutual agreement between appellant and appellees the first suit under the original contract was abandoned, and to defeat Spaulding's claim the appellees, as attorneys, represented appellant in the case filed by Spaulding against appellant and defended him in the lower and higher courts and were instrumental in defeating Spaulding's suit against appellant. The contract sued on was for services in the case of Spaulding v. Laybourn, and is an acknowledgment of services rendered and to be rendered in that suit and also for services in the former suit instituted, and for which services in said cases the appellees had charged $1,000, as set out in the

pleadings and as shown in the original statement of this case. The first suit was to recover a specific amount. One-third of the recovery was to be appellees'. In the second suit appellees and appellant sought to defeat a recovery against appellant, for which there was no fee agreed upon until. the contract of September 30, 1912. By mutual agreement the first suit had been abandoned, and the second was defended to ultimate success. The appellant admits that the appellees were entitled to $850 under the first contract. This appellees surrendered upon a mutual agreement to abandon the first suit. They defeated the recovery claimed by Spaulding of $4,124, with accrued interest sued for, and by that means secured appellant's rights and demands.

[12] The uncontroverted evidence is that a reasonable fee for such services was $1,500. The first contract did not obligate the appellees to defend the second suit.

We believe under the facts above stated and under the other circumstances shown in this case the court and jury were authorized to find that there was a consideration for the contract of 1912. The facts are sufficient to support the findings of the jury as set out in the opinion. There being no contract to defend the second suit, the appellees had a right to contract for compensation for their services therein, and the facts show it was reasonable as found by the jury. The cases cited in the original opinion, Clarke v. Faver, 40 S. W. 1009, and Headley v. Good, 24 Tex. 232, we think, sustain our holding.

The motion will be overruled.

HALL, J., dissents.

---

&#9740;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes