## MANHATTAN OIL COMPANY *v.* CARRELL.

[No. 20,536.   Filed April 19, 1905.]

1.  CONTRACTS.— *Interpretation.*— *Circumstances.*— In intérpreting a contract the court must consider the situation, circumstances and purpose of the contractors.   p. 530.

2.  SAME.—*Oil and Gas Lease.*—"*Paying Quantities.*"—A contract to put down a test well and afterwards others "if oil or gas is found in paying quantities" means that the total expense and all of the circumstances and prospects shall be considered in arriving at a decision as to whether wells will produce "in paying quantities."   p. 531.

3.  SAME.—"*Paying Quantities.*"—*Who Decides.*—A contract to put down other wells if the test well produces oil or gas "in paying quantities" leaves the decision to the operator, acting honestly and in good faith, whether the well produces "in paying quantities," but his judgment must not be arbitrary nor spring from some ulterior purpose to get a dishonest advantage.   p. 531.

4.  SAME. — "*Paying Quantities.*" — *Fraudulent Decision.* — Where an operator contracts with a landowner to put down other wells, if gas or oil is found "in paying quantities" in a test well, and such operator decides that gas or oil is not found "in paying quantities," his judgment can not be attacked except on the ground of fraud, and this must be pleaded.   p. 532.

From Wells Circuit Court; *C. W. Watkins,* Special Judge.

Action by Harry B. Carrell against the Manhattan Oil Company.   From a judgment for plaintiff, defendant appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Reversed.*

*Jay A. Hindman, Motter, MacKenzie & Weadock,* for appellant.

*S. W. Cantwell, L. B. Simmons, J. S. Dailey, Abram Simmons* and *F. C. Dailey,* for appellee.

HADLEY, C. J.—August 4, 1897, appellee granted to appellant, in consideration of $1, all the oil and gas under a certain described fifty acres of land in Blackford county, with the right to enter thereon for the purpose of drilling

and operating for oil or gas, and the right to erect and maintain all structures necessary for producing, saving and transporting the same from the premises; the grantor reserving to himself one-sixth part of all the oil produced and saved.

Among divers other stipulations, the contract embraced the following provisions: "In case no well is completed within ninety days from this date then this grant shall become null and void unless second party shall pay to first party $30 in advance for each thirty days such completion is delayed. * * * It is further agreed that, after the completion of the first well, the said second party is to drill and complete one well each ninety days, until they shall have completed five wells, if oil is found in paying quantities. In case any of the additional wells shall not be completed within ninety days of the preceding well, then the second party shall pay to first party $30 in advance for each thirty days' delay in completing said well."

Appellant entered upon the premises under the contract, and within ninety days from said August 4, to wit, October 24, 1897, completed a well that produced both oil and gas. No other well was drilled or attempted, but possession of the premises was retained, and repeated efforts made by appellant to operate the well for oil up to February 25, 1901, when appellee brought this suit to recover of appellant the penalty provided for failure to drill additional wells. There was a verdict and judgment for appellee for $3,875.

The overruling of appellant's motion for a new trial is the only error assigned.

The questions presented arise upon the instructions given to the jury. Those involved follow: "(2) In order to entitle the plaintiff to recover in this action, it is necessary for him to prove that the defendant constructed a well on the premises described in the lease mentioned in the complaint, and that oil was found in paying quantities, and

that the defendant has failed to complete additional well or wells on said premises within the time fixed by said lease for the completion thereof. When an oil-well is constructed and is operated for oil, it produces oil in paying quantities if the value of the operator's share of the oil produced is in excess of the cost of operating the well; and if the expense of operating the well is less than the operator's share of the oil produced, however small it may be, yet said well produced oil in paying quantities.

"(3) Oil is found in paying quantities in a well when the value of the working interest in the oil capable of being produced from such well is more than the necessary expenses incurred in producing said oil; and in determining the expense so incurred in producing said oil, you should not take into consideration the expense of constructing said well, or of equipping the well for the production of oil.

"(4) I instruct you that if a well, being down, pays a profit, even a small one, over the operating expenses, it is producing oil in paying quantities, though it never may repay its cost, and the operation as a whole may result in a loss.

"(5) I instruct you that by the terms 'operating expenses' as used in these instructions, I mean the current expenses incurred in producing oil after the well has been completed and equipped ready for the production of oil, together with the necessary cost of making repairs to the machinery and equipments used in producing said oil.

"(6) If you find from the evidence that the defendant completed a well on the real estate described in the lease mentioned in the complaint, on or about the 24th day of October, 1897, and that said well, when so completed, produced both gas and oil; and if you further find that such well was thereafter operated for oil by the defendant for a period of about three months, and that during said period it produced oil in such quantities as that the value of the share of the oil received therefrom by the defendant was in

Manhattan Oil Co. *v.* Carrell.

excess of the reasonable cost to the defendant of operating said well during said time, including the reasonable cost of repairs to the machinery and equipments used in producing said oil during said time, then I instruct you that you may find from this and all the evidence that oil was found in said well in paying quantities, and, if so, it became the duty of the defendant to complete four additional wells on said premises within the time fixed for the completion thereof by said lease, that is to say, one additional well within ninety days from the date of the completion of the first well, another well within 180 days from the time of the completion of the first well, another well within 270 days from the time of the completion of the first well and another well within 360 days from the time of the completion of said first well. And if you further find that the defendant had not completed any one of said additional wells at the time of the commencement of this action, then I instruct you that your verdict should be for the plaintiff and the amount of the recovery would be $30 for each thirty days for each of said wells from the time fixed for the completion of each of said wells until the time of the commencement of this action."

"(8) If you find from the evidence that the defendant completed one well on the premises, described in the lease mentioned in the complaint, and that oil was found in paying quantities in said well, then, under the terms of said lease, it became the duty of the defendant to put down and complete four additional wells on said premises within the time specified for the completion thereof in said lease, and the fact, if it is a fact, that gas was also found in said first well in such quantities as to make it impracticable to operate said well for oil, still, that fact would not excuse the defendant from the completion of said additional wells. Whenever said first well was completed and if oil was found in said well in paying quantities, it became the imperative

duty of the defendant to put down such additional wells. And if it failed to put down such additional wells, it is liable to respond to the plaintiff in damages in the amount specified in said lease for its failure so to do."

Do these charges take a correct view of the contract? It should be borne in mind that the single relief sought in this action is the recovery of a penalty for failure to drill additional wells. The gist of the charges, when taken together, is that if oil was found in the test or first well in a sufficient quantity to pay a profit, however small, in excess of the cost of producing it, excluding the cost of drilling the well and of equipment, then oil was found in paying quantities, within the meaning of the contract, and the defendant would be required to drill the four additional wells, even though it became manifest that the oil to be obtained would not repay first cost, and the enterprise, as a whole, would result in a loss to the defendant. The parties surely did not mean this.

1. When called upon to interpret their contract, we should consider the situation occupied, and the facts and circumstances surrounding the parties, their object, etc., at the time the contract was entered into. In doing this it is safe to assume that the appellant was engaged in the business of leasing lands and exploring for oil, for profit; that the business required large capital, no part of which was employed without its first appearing, on business principles, that there existed a fair promise of reasonable gain on the full sum invested; that the drilling of a test well in new territory was not only expensive, but the result full of uncertainty. The company was to perform all the labor, put up all the money, and take all the chances of success and failure. If the test well proved unproductive, all the labor and money it had cost would be lost to the company. Appellee would lose nothing, for he would risk nothing. He was arranging to have his land explored for oil without expense to him. If additional wells were to be made, the expense of making and

equipping for the production of oil would have to be re-
peated in each well. These things must have been present
in the minds of the parties at the time they executed the
contract. Under such circumstances, it is not reasonable
that the operator should enter into a bargain to go on making
wells, if the test well proved there was no reasonable pros-
pect of getting back the cost of drilling and equipment.
This would not be a business transaction, and this fact
would be as apparent to appellee as to appellant.

2. It seems clear that the actual intention of the parties
was that appellant should enter upon appellee's farm, and,
without expense to the latter, sink a well into the region
where oil was usually found if it existed. If oil in any
quantity was found, capable of being mined, then, the ques-
tion arose, will it pay to go on with the development? To
confine the meaning of the phrase "if oil is found in paying
quantities" to the limits outlined by the instructions seems
preposterous. It amounts to telling the jury that, excluding
the cost of sinking and equipping a well, if it be found that
it pays to pump the well—that is, if the oil obtained yields
a profit, however small, over the expense of pumping, and
incidental repairs to the pumping machinery—then the
jury must find that oil is found in paying quantities, within
the meaning of the contract. We can not accept this ren-
dering as correct. If the capital expended in the making
and equipment of wells is not to be counted, and the under-
taking, as a whole, results in a loss, how can it be said to be
paying? It seems very plain to us that the additional wells
were to be drilled only in the event that oil was found in
such quantity as would, taken in connection with other
present conditions, induce ordinarily prudent persons, en-
gaged in like business, to expect a reasonable profit on the
full sum required to be expended in the prosecution of the
enterprise.

3. And whether or not oil is found in paying quantities

is, furthermore, to be determined exclusively by the operator, acting in good faith and upon his honest judgment. We do not mean an arbitrary judgment, or one springing from an ulterior purpose to get some unfair or dishonest advantage of the landowner, but a judgment arrived at by acting in good faith upon sound business principles.

4. But, as in other cases, fraud will not be presumed, and becomes provable only under proper averments. Therefore, under the pleadings and proof of this case, it was error in the court to submit to the jury the question whether oil was found in paying quantities. This provision of the contract must be held to be for the benefit of the operator. Any quantity would pay the landowner, for it would have cost him nothing. Under such a contract it is he who puts up the stake, and has to reckon with profit and loss, that shall decide, and not he who takes no risk, but receives a chance to be enriched at the expense and enterprise of another. "The operator," says the court in *Young* v. *Forest Oil Co.* (1899), 194 Pa. St. 243, 250, 45 Atl. 121, in discussing this subject, "who has assumed the obligations of the lease, has put his money and labor into the undertaking, and is now called upon to determine whether it will pay to spend some thousands of dollars more in sinking another well to increase the production of the tract, is entitled to follow his own judgment. If that is exercised in good faith, a different opinion by the lessor, or the experts, or the court, or all combined, is of no consequence, and will not authorize a decree interfering with him." "So long as the lessee is acting in good faith," says the same court in *Colgan* v. *Forest Oil Co.* (1899), 194 Pa. St. 234, 242, 45 Atl. 119, 75 Am. St. 695, "on business judgment, he is not bound to take any other party's, but may stand on his own. * * * No court has any power to impose a different judgment on him, however erroneous it may deem his to be." To same effect, see *Ammons* v. *South Penn Oil Co.* (1900), 47 W. Va. 610, 35 S. E. 1004.

The jury was misdirected by the instructions, for which cause the appeal must be sustained. Judgment reversed and cause remanded, with instructions to grant appellant a new trial.