AYCOCK v. PARAFFINE OIL CO. et al.
(No. 437.)

(Court of Civil Appeals of Texas. Beaumont. March 28, 1919. Rehearing Denied April 16, 1919.)

1. MINES AND MINERALS ⬥⟹78(1)—"OIL IN PAYING QUANTITIES."

In action for breach of oil and gas lease requiring drilling when oil should be found in paying quantities on adjacent land, it was not· error to instruct that the term "oil in paying quantities" means that the oil can be marketed in such manner as to offset the expense of drilling the wells producing it and the additional expense of operating.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Paying· Quantities.]

2. MINES AND MINERALS ⬥⟹78(1)—"OIL IN PAYING QUANTITIES."

The definition of. "oil in paying quantities" as not including, but, excluding the cost of drilling, is applicable, where the lessee has

drilled the well and is operating it under the contract, and the lessor is seeking to take the premises from the lessee's possession on the ground that the well is not producing oil in paying quantities, but is not applicable where the lessee is required to drill a well when oil shall be found in paying quantities (citing Words and Phrases, vol. 6, p. 5247, Paying Quantities).

3. MINES AND MINERALS ☜78(1)—"OIL IN PAYING QUANTITIES."

"Oil in paying quantities," as used in a lease obligating the lessee to drill if oil is found in paying quantities, means that additional wells are to be drilled only in case oil be found in such quantities as would, taken in connection with other conditions, induce ordinarily prudent persons in a like business to expect a reasonable profit on the whole sum required to be expended.

4. TRIAL ☜323 — VERDICT — SIGNING BY FOREMAN.

It is not essential to the validity of a verdict that it be signed by the foreman.

5. TRIAL ☜360—VERDICT—SPECIAL ISSUES—SURPLUSAGE.

Where jury, the case being submitted on special issues, returns a general verdict without any instructions from the court, in addition to answering the questions submitted, and the court copies into its judgment the general verdict and unsigned special verdict, the judgment is not void on the ground that it cannot be determined whether it is on the special or general verdict, as court could ignore general verdict.

6. APPEAL AND ERROR ☜1073(1)—HARMLESS ERROR—JUDGMENT.

That court copied into judgment a general verdict, though case was submitted on special issues, is harmless error, where judgment rendered was demanded by the special issues.

Appeal from Hardin County Court; W. S. Parker, Judge.

Suit by B. L. Aycock against the Paraffine Oil Company and another. From judgment for defendants, plaintiff appeals. Affirmed.

A. M. Hill, of Kountze, for appellant.
A. Ludlow Calhoun, of Beaumont, for appellee.

WALKER, J. This is a suit for damages by the appellant against the appellees for breach of contract entered into by and between appellant on the one part, and W. W. Dies of the other part, dated the 17th day of May, 1916. The appellees hold under mesne conveyances from Dies. The case was tried before a jury on special issues. The third and sixth paragraphs of the contract are as follows:

"Third. The party of the second part shall develop said land for oil, and other minerals whenever it is necessary to protect said land from being drained by wells on adjacent land, and within a reasonable time, that is to say, when a well or wells shall have been completed and are producing oil in paying quantities within 200 feet of the boundary lines of the land covered by this lease. Second party is hereby authorized to partition said ten acres with Gulf Production Company. The drilling obligation herein not to be binding until said land is partitioned."

"Sixth. The party of the first part is to be at no expense or liability whatsoever, connected with, arising from or growing out of the operation or development of said land for oil or other minerals by second party hereunder."

Question No. 3 submitted to the jury is as follows:

"Was any well producing oil in paying quantities brought in within 200 feet of the land on which the lease in question was located?"

The jury answered "No."

[1] The court gave the following definition of "oil in paying quantities":

"You are instructed that the term oil in paying quantities means that the oil produced can be marketed in such manner as to offset the expense of drilling the wells producing it and the additional expense of operating said well or wells producing the same."

Under the testimony, it would cost from $10,000 to $15,000 to drill a well on the leased premises. A well within 200 feet of the lines of appellant's property was brought in by the Sun Company before the institution of this suit. This well cost between $10,000 and $15,000. It produced oil for a short while, and then ceased production. The well by no means produced enough oil to pay for boring the same.

Appellant assigns as error the giving of the above instruction defining the term "oil in paying quantities," his proposition being as follows:

"The phrase 'oil in paying quantities,' used in oil leases does not include, but excludes, the cost of drilling."

[2] This assignment cannot be sustained. The definition of "oil in paying quantities as submitted by appellant in his assignment is an approved statement of the law in those cases where the lessee has drilled the well and is operating the same under the contract, and the lessor is seeking to take the premises from the possession of lessee on the ground that the well is not producing oil in paying quantities. However this rule is not applied where the lessee is required to drill a well when oil has been found in paying quantities.

The following general definition of "paying quantities" is given in Words and Phrases, vol. 6, p. 5247:

"The term 'paying quantities,' as used in an oil lease for a given term and as much longer as oil can be produced in paying quantities, means paying quantity to the lessee. If the well

pays a profit, even small, over operating expenses, it produces in paying quantity, though it may never repay its cost, and the operation as a whole may result in a loss. The phrase 'paying quantities,' therefore, is to be construed with reference to the operator, and by his judgment, when exercised in good faith."

[3] In construing Manhattan Oil Co. v. Carrell, 164 Ind. 526, 73 N. E. 1084, Thornton, in his admirable work, The Law of Oil and Gas (3d Ed.) par. 149, p. 239, makes the following statement of the rule, under facts similar to the facts in this case:

"A provision in an oil lease that after the completion of the first well the lessee should drill a specified number of wells, in case oil should be found in paying quantities, does not mean that, if oil was found in the test or first well in a sufficient quantity to pay a profit, however small, in excess of the cost of producing it, excluding the cost of drilling the well and of equipment, then oil was found in paying quantities, within the meaning of the contract, but means that additional wells are to be drilled only in case oil be found in such quantities as would, taken in connection with other conditions, induce ordinarily prudent persons in a like business to expect a reasonable profit on the whole sum required to be expended; and whether oil was found in paying quantities is to be exclusively determined by the operator, acting in good faith."

[4, 5] The jury in this case returned two verdicts, one answering the special issues submitted by the court, and in addition thereto the following general verdict for the defendant:

"We, the jury, find a verdict in favor of the defendants. L. L. Singleton, Foreman."

Both of these verdicts were copied into the judgment rendered by the court. The special verdict was not signed by the jury, while the general verdict was. On this judgment appellant assigns two propositions: (1) That the special verdict is void because not signed by the foreman; and (2) that the jury having returned a general verdict without any instructions from the court, and the same having been copied by the court into its judgment, the judgment is void because it cannot be determined whether the judgment is rendered on the special verdict or the general verdict.

These assignments are overruled. It is not essential to the validity of a verdict that it be signed by the foreman. Burton v. Bondies, 2 Tex. 204; Banana Co. v. Wollfe, 22 S. W. 269; Dunlap v. Raywood Rice Canal & Milling Co., 43 Tex. Civ. App. 269, 95 S. W. 43; Quanah, A. & P. Ry. Co. v. R. D. Jones Lbr. Co., 178 S. W. 861; Crosby v. Stevens, 184 S. W. 711; Calvin v. Neel, 191 S. W. 794; City of Henderson v. Fields, 194 S. W. 1004; Barker v. Ash, 194 S. W. 467. The following proposition is taken from the brief of appellee, and we believe that it states a correct proposition of law:

"When a case is submitted to a jury on special issues, the court from the jury's answers renders judgment. Even though the jury in addition to making answers to the questions submitted should return a general verdict as was done in this case, the judge can ignore same in rendering his judgment." Heflin v. Burns, 70 Tex. 347, 8 S. W. 48; Dunlap v. Raywood Rice & Milling Co., 43 Tex. Civ. App. 269, 95 S. W. 43.

[6] The fact that the general verdict was copied into the judgment of the court would not distinguish this case from those cited above. On the answer to question 3 as copied above, no other judgment except one for the defendants could have been rendered by the court, and in receiving and entering of record a general verdict for the defendants, no injury has been done appellant.

In view of the disposition made by us of the above assignments, all other assignments made by appellant become immaterial, and are overruled.

Finding no error in this record, this case is in all things affirmed.