## GRIFFITH v. JOHNSON. (No. 114.)

(Court of Civil Appeals of Texas. Eastland. March 26, 1926. Rehearing Denied April 30, 1926.)

1. Mines and minerals ☞109—Whether oil or gas is found in paying quantities is determinable by good faith and honest judgment of operator.

Whether oil or gas is found in paying quantities within meaning of lease is to be determined by good faith and honest judgment of operator, applying sound business principles.

2. Mines and minerals ☞109—Evidence held to warrant inference that well driller elected to decide that wells contained gas in paying quantities, so as to render him liable to landowner for stipulated sum.

Evidence held to warrant inference that one contracting to drill wells to stated depth, unless oil or gas in paying quantities were sooner discovered, and to pay landowner certain sum if discovered in such quantities, elected to decide, when wells were drilled to less than such depth, that they contained gas in paying quantities, so as to render him liable to landowner for stipulated payment.

Error from District Court, Taylor County; W. R. Ely, Judge.

Suit by J. E. Johnson against A. A. Griffith. Judgment for plaintiff, and defendant brings error. Affirmed on rehearing.

Mack & Mack and McLean, Scott & McLean, all of Fort Worth, and R. W. Haynie, of Abilene, for plaintiff in error.

B. L. Russell, of Baird, and Dallas Scarborough, of Abilene, for defendant in error.

PANNILL, C. J. Plaintiff in error will be designated as appellant, and defendant in error as appellee.

On the original consideration of this appeal, the judgment in appellee's favor was reversed and the cause remanded. At the

time no brief was filed for appellee. On motion for rehearing it has been shown that the failure to file briefs was not due to any fault on appellee's part. Upon consideration of the entire case it appears that the judgment should be affirmed, and the reasons will be briefly stated.

Appellant drilled three wells under a contract requiring that a well for oil or gas be drilled to a depth of 600 feet, unless oil or gas in "paying quantities" was discovered at a less depth, and payment to appellee of a certain sum, if oil or gas in "paying quantities" was discovered on premises of appellee. Each of the wells was drilled to a depth of approximately 300 feet. In the first well a small flow of gas was found. Appellant then moved his machinery to another location, and drilled to the same sand and discovered a flow of gas of approximately 1,750,000 cubic feet. No effort was made to drill deeper. The well was capped and another drilled to the same stratum, and a gas well with a volume of 2,370,000 cubic feet was found. The rock pressure in each was about 90 pounds. After appellant learned that he could not market the gas, appellee made demand on appellant for payment of the sum agreed on. Appellant replied in substance that there was no agreement as to the time payment should be made, and that appellant could not pay all the amount demanded, but if appellee needed the money appellant would pay as much as $50 or $100 on the 1st of the next month. Thereafter appellant moved his drilling machinery to work elsewhere.

The evidence shows that all the towns in the territory contiguous to the wells in question were being supplied with gas, and that the only pipe line for such product was that of the Texas Company, in which the pressure ranged from 175 pounds in summer to 200 in winter; that on account of the greater pressure in such pipe line the gas from the wells in question would not enter such line, but on account of having a lower pressure the gas from the wells in question would be "kicked back."

Therefore the only possible method by which the gas from appellee's wells could be utilized would require the building of a pipe line to Moran some five miles away and the installation of compressor pumps commonly called a booster plant. A test of the well was had by the Texas Company's agents, and such agents informed appellee that the gas was not sufficient either in volume or pressure for use by that company. Appellant then sought to secure an agreement from the Texas Company to use the gas, appellant offering to buy and operate the necessary plant, which offer the Texas Company refused on the ground that it was not practical to do so with the wells in question. The cost of constructing the necessary plant and pipe

283 S.W.—39

line was estimated by appellee's witness to exceed $20,000. The cost of operating such a plant was estimated by appellee's witness at $200 per month or more, and by the Texas Company's representatives to be from 2 to 3 cents per thousand cubic feet. It is further uncontradicted that the gas in question being produced from a shallow sand that the life of such wells is uncertain. The rules of the railroad commission do not permit the taking of more than 50 per cent. of the gas produced from gas wells on account of the fact that when the gas pressure is reduced to a certain stage, salt water will enter the gas stratum and ruin all the wells being operated from that sand. The price being paid by the Texas Company for gas delivered to its pipe line is not shown.

Appellant introduced several witnesses, experienced oil men, and one of them the Texas Company's engineer, who testified that in the judgment of such witnesses, the wells in question did not produce, under the facts and evidence, gas in "paying quantities." No witness testified for appellee that the gas from such wells was being produced in "paying quantities."

Appellee brought this suit in two counts: One for the sum stipulated to be paid, alleging that gas had been found in "paying quantities," and, in the alternative, if it was determined that gas in "paying quantities" had not been found, for cancellation for failure to pay the rentals provided for in the lease and for failure to drill to the required depth. Upon the trial, the court found in appellee's favor on the first count.

[1] The appellant seeks to apply the general rule:

"That whether oil or gas is found in 'paying quantities' is to be determined by the operator acting in good faith and upon his honest judgment, not an arbitrary judgment nor one springing from an ulterior purpose or to obtain some unfair advantage of the land owner, but a judgment arrived at by the exercise of good faith, and by applying sound business principles." T., P. C. & O. Co. v. Bruce (Tex. Civ. App.) 233 S. W. 535; T., P. C. & O. Co. v. Bratton (Tex. Civ. App.) 239 S. W. 688; Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 253 S. W. 908; Aycock v. Paraffine Oil Co. (Tex. Civ. App.) 210 S. W. 851; Manhattan Oil Co. v. Carrell, 73 N. E. 1084, 164 Ind. 526.

The rule above quoted, which was applied in the cases cited, is generally applied in cases where the continuance or termination of the lease is contingent upon whether oil and gas is being produced in "paying quantities," and where the lessee is producing and marketing the gas, in such case the question as to whether such product is being produced in "paying quantities" is left to his judgment under the rule stated. This rule has been further applied to cases where oil and gas has been discovered and it is sought to impose upon lessee the duty of drilling

additional wells, as shown in Aycock v. Paraffine Oil Co., supra, in which case the matter is viewed from a different angle not material here.

[2] It appears that the application of the rule as contended for by appellant must lead to an affirmance. When appellant tested the wells in question, he had the option to declare either that he had discovered gas in "paying quantities" and pay the sum stipulated, or that the gas found would not pay and drill to the required depth. It is believed that the conclusion of the court that gas in "paying quantities" was found is supported by the testimony quoted, from which it can be reasonably inferred that appellant elected to decide that the wells contained gas in "paying quantities," and, having made that election, he is bound. The former opinion is withdrawn.

Appellee's motion for rehearing granted, and the judgment affirmed.