### TEXAS PACIFIC COAL & OIL CO. v. STUARD et ux. (No. 341.)

Court of Civil Appeals of Texas. Eastland.
Feb. 3, 1928.

Rehearing Denied March 9, 1928.

**I. Courts** ⬅91(1)—**Court of Civil Appeals is bound by Supreme Court's determination, in dismissing writ of error for want of jurisdiction, that there was no conflict between prior decisions of Courts of Civil Appeals.**

Court of Civil Appeals is bound by Supreme Court's determination, in dismissing writ of error for want of jurisdiction, that there was no conflict between decision of another Court of Civil Appeals on former appeal and prior decisions of same court and third Court of Civil Appeals, and must dispose of second appeal in light of such determination.

**2. Mines and minerals** ⬅109—**Cost of drilling well may be recovered for breach of drilling contract, though defendant believed in good faith that discovery of oil and gas in paying quantities would not have resulted.**

If one obligates himself to drill a well for oil and gas to certain depth and fails to do so, recovery may be had for cost of drilling such well, though he believed in good faith that such operations would not have resulted in discovery of oil and gas in paying quantities.

**3. Limitation of actions** ⬅127(13)—**Claim in amended petition for breach of oral contract to drill second well, where original petition alleged breach of written contract to complete first well, held barred by limitation though some work was done on first well during period.**

Claim for damages for breach of oral agreement, alleged in amended petition, to drill and and complete second oil well, work on which was abandoned over two years before filing of original petition alleging breach of written contract in lease by failure to complete first well, *held* barred by limitation, though some work was done on first well to increase production thereof within such period.

**4. Limitation of actions** ⬅127(11)—**Limitation against cause of action first alleged in amended petition would run until filing thereof.**

Limitation against cause of action, first alleged in amended petition for breach of oral contract to drill and complete second oil well after destruction of first, would run until filing of amended petition.

**5. Damages** ⬅120(1)—**Plaintiffs cannot recover damages exceeding amount they would have received had contract not been broken.**

Plaintiffs are not entitled to damages for breach of contract in greater amount than they would have received had it not been broken, sole purpose of actual damages being compensation.

**6. Mines and minerals** ⬅109—**Plaintiffs held not entitled to lost royalties in addition to cost of drilling oil well as damages for breach of drilling contract.**

Plaintiffs, in action for breach of contract to drill oil well, *held* not entitled to amount of royalties, which would have accrued to them had defendant fully developed premises, in addition to amount which it would have cost defendant to drill well.

**7. Mines and minerals** ⬅109—**Cost of drilling oil well is measure of damages for breach of drilling contract.**

The cost of drilling an oil well is the correct measure of damages for the breach of a drilling contract.

**8. Mines and minerals** ⬅109—**Plaintiffs, pleading and proving that they would have realized less than cost of drilling oil well had it been drilled, made such amount measure of damages for failure to drill.**

Plaintiffs pleading and proving, in action for breach of contract to drill oil well, that total amount they would have realized had well been drilled and premises thereafter developed was less than cost of drilling well, made such amount the measure of their damages.

**9. Damages** ⬅117—**Where plaintiffs' pleading and proof show that either of two measures of damages will fully compensate him, that less expensive to defendant must be adopted.**

If facts pleaded and proved by plaintiff showed that either of two measures of damages for breach of contract would fully compensate him for his loss, that measure which is less expensive to defendant must be adopted.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Limitation of actions ⚖═32(1)—Action for damages by destruction of oil well because of lessee's negligence was action ex delicto barred by two-year statute.**

Action for damages by destruction of oil well, because of lessee's negligence in placing control head on casing on encountering large volume of gas, was action ex delicto barred by statute two years after casing blew out.

**11. Mines and minerals ⚖═109—Damages for destruction of oil well held improperly allowed, being included in award of royalties lost by failure properly to develop premises.**

Allowance of damages for destruction of oil well because of defendant lessee's negligence *held* erroneous; such damages being included in award of greater sum as total value of additional royalties plaintiffs would have received by proper development of premises.

**12. Contracts ⚖═245(1)—All implications are superseded by clearly expressed agreement.**

If one's duties and obligations under contract are clearly expressed, all implications which would otherwise arise are superseded by express agreement.

**13. Mines and minerals ⚖═78(1)—Lessee must develop premises diligently on discovering oil and gas in paying quantities, if possible to do so profitably.**

It became duty of corporation accepting oil and gas lease, on discovering oil and gas in paying quantities, to develop premises diligently for purpose of producing such oil and gas, if it could be done profitably to lessee.

**14. Contracts ⚖═167—Law is part of every contract.**

The law is a part of every contract.

**15. Mines and minerals ⚖═78(7)—Lessors' pleading of oral contract to develop premises held not to preclude reliance on implied obligations under written oil lease.**

Lessors' pleading of express oral contract by lessee diligently to develop premises, as well as obligation implied from provisions of written oil lease, *held* not precluded from relying on such implied obligation; oral agreement not adding to nor substracting from lessee's duty under lease, but constituting mere oral understanding as to implications of lease.

**16. Mines and minerals ⚖═78(1)—Implied obligation to develop premises after drilling exploratory well held part of written oil lease, and governed by four-year statute.**

Implied obligation under oil lease to develop premises after drilling exploratory well *held* part of written contract, and hence governed by four-year, not two-year, statute of limitations.

**17. Trial ⚖═258(1)—Request for definitions in written objections and exceptions to charge submitting special issue held sufficient.**

Request for definition of phrases, "in paying quantities" and "due diligence," in written objections and exceptions to charge submitting special issue as to whether lessee developed premises with due diligence until land proved unproductive of oil or gas in paying quantities, *held* sufficient.

**18. Trial ⚖═260(9)—Refusal of requests for definitions of "in paying quantities" and "due diligence" held not justified as embodied in special issue whether ordinarily prudent operator would have drilled third well to obtain sufficient production to pay costs plus reasonable profit.**

Refusal of requests for definitions of phrases, "in paying quantities" and "due diligence," *held* not justified on ground that they were embodied in special issue whether ordinarily prudent oil operator would have drilled third well on lease for purpose of obtaining enough oil and gas to pay for drilling and operation thereof plus reasonable profit; it being essential that jury understand such phrases to answer special issue as to whether defendant developed premises with due diligence until proved unproductive of oil or gas in paying quantities.

**19. Appeal and error ⚖═1067—Refusal to submit definitions of terms in special issue as to development of premises with "due diligence" until proved unproductive of oil or gas "in paying quantities" held prejudicial to lessee (Rev. St. 1925, art. 2189).**

Refusal to submit definitions of phrases, "in paying quantities" and "due diligence," in special issue as to whether defendant lessee developed premises with due diligence until land proved unproductive of oil or gas in paying quantities, *held* prejudicial to defendant, in view of Rev. St. 1925, art. 2189.

**20. Mines and minerals ⚖═78(1)—Lessee's implied obligation to develop premises attached when test well disclosed oil and gas in paying quantities, though it did not produce enough to pay expenses because of accident due to lessee's negligence.**

While lessee's implied obligation to develop premises under oil lease arose only after test well disclosed presence of oil and gas in paying quantities, obligation to develop then attached, though well did not produce enough oil and gas to pay expenses of drilling because of accident due to lessee's negligence, if enough to pay reasonable profit on operations would have been discovered by additional drilling.

### On Rehearing.

**21. Appeal and error ⚖═216(1)—Failure to define legal term is reversible error, where such objection was made to charge, though objector failed to prepare and request special charge (Rev. St. 1925, art. 2189).**

Trial court's failure to define a legal term, as required by Rev. St. 1925, art. 2189, is reversible error, where specific objection was made to charge on such account, though party objecting failed to prepare and request a special charge relative thereto.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by R. C. Stuard and wife against the Texas Pacific Coal & Oil Company. Judgment for plaintiffs, and defendant appeals.

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Reversed and rendered in part, and reversed and remanded in part.

John Hancock and Clarence Wightman, both of Fort Worth, for appellant.

Joe Burkett, of San Antonio, and Milburn McCarty, of Eastland, for appellees.

HICKMAN, C. J. This is the second appeal of this case. A brief statement only of the nature of the case will be given. For a more detailed statement reference may be had to the opinion on the former appeal recorded as Texas & Pacific Coal & Oil Co. v. Stuard et ux. (Tex. Civ. App.) 269 S. W. 482. On the trial after reversal judgment was rendered for appellees against appellant for $80,000 based upon three items of damages found by the jury as follows: $50,000 for the failure of appellant to drill and complete a well in a workmanlike and proper manner upon appellees' premises; $25,000 for nondevelopment of such premises; and $5,000 for the failure of appellant properly to complete well No. 1 drilled on said premises and thereafter to operate same in a careful and proper manner. The only material difference between the pleadings of the appellees upon which they went to trial the last time and those under consideration upon the former appeal, of which we shall have occasion to take notice in this opinion, is the additional allegation of an express oral contract between appellees and the appellant, acting through its then vice president and general manager, W. K. Gordon, to the effect that within 60 days from the execution of said lease the appellant would begin actual drilling and thereafter drill and complete a well upon said premises through the "McClesky sand," or to paying production at a lesser depth, and develop such premises after the completion of said first well with due diligence. This express oral contract is alleged to have been made contemporaneously with and in addition to the contract expressed in the lease, and as a further consideration for the signing of said lease by the appellees.

The lease contains the following provision with reference to drilling:

"The Texas & Pacific Coal Company agree to begin operations to drill a well on the land herein leased within sixty days from this date and failure to begin operations will act as a forfeit on this lease contract."

On the former appeal the record was in such condition as that appellant's pleas of limitation could not be considered by the court. As the record comes to us on this appeal, it contains a proper pleading, setting up the two and four year statutes of limitation with objections to the court's rendering judgment on each of the items of damages, on the ground that same were barred by the two and by the four year statutes of limita-tion. All of the pleadings of the appellees, together with their file marks, were introduced in evidence and are contained in the statement of facts. The question of limitation is therefore properly before us to be considered along with the other assignments of error.

[1, 2] On the former appeal the only judgment rendered against appellant was one for $30,000 for its failure to drill and complete in workmanlike and proper manner a well on plaintiffs' premises. The Fort Worth court reversed that judgment. In appellees' application for writ of error they alleged as grounds of jurisdiction in the Supreme Court that such decision was in conflict with a prior decision of the same Court of Civil Appeals in the case of Henry Oil Co. v. Head, 163 S. W. 311, and also that it was in conflict with the decision of the Court of Civil Appeals for the Fifth District in the case of Covington Oil Co. v. Jones, 244 S. W. 287. By dismissing the writ for want of jurisdiction, the Supreme Court determined that there was no conflict. We are clearly bound by that determination, and it is our duty to dispose of this appeal in the light thereof. Such holding by the Supreme Court must necessarily have been based upon one of two grounds: First, that under the provisions of the lease there was no obligation resting upon appellant to drill and complete a well; or, second, that the record disclosed that appellant had, in fact, drilled a well in accordance with its obligations. Otherwise, the decision on the former appeal would have been in conflict with the decisions in the cases cited, for it is unquestionably the settled rule, as announced in those cases, that if one obligates himself to drill a well for oil and gas to a certain depth and fails to do so, recovery may be had for the cost of drilling such well, and he will not be heard to say, in defense of an action for his failure so to drill, that he in good faith believed that such operations would not have resulted in the discovery of oil and gas in paying quantities.

[3] That portion of the judgment in the instant appeal based upon the failure of the appellant to drill and complete a well on the premises must rest, if at all, upon the additional oral contract pleaded in appellees' second amended original petition, as above described. This item of $50,000 for failure to drill a well cannot stand. It is barred by limitation. If the obligation rested solely or in part in the parol agreement, the two-year statute would govern, and more than two years elapsed after abandoning work on well No. 2 before the filing of the original petition herein. The fact that, within the two-year period to the filing of the original petition, appellant caused some work to be done on well No. 1 in the hope of bettering its condition, could not operate to prevent the running of the statute, because the evidence discloses an agreement not to drill No. 1 fur-

ther after the accident, which will hereafter be mentioned, happened thereto, and efforts thereafter made by appellant to increase the production of well No. 1 could not be construed as efforts to drill a well to the deeper sand below, known as the "McClesky sand."

[4] If the cause of action for this element of damages was not barred prior to the filing of the original petition, it was unquestionably barred before the filing of the second amended original petition in 1926. Under the holding upon the former appeal above referred to, this cause of action for the breach of a drilling contract was not in the case prior to the filing of this last petition, and limitation would run upon it until such time.

[5-9] There is another reason why this item cannot stand. The sole purpose of actual damages is compensation. Appellees are not entitled to damages by virtue of appellant's breach of the contract greater in amount than the money they would have received had it not been breached. Upon their pleadings and evidence they were awarded $25,000 damages in this case as the total amount of royalties which would have accrued to them had appellant fully developed their premises by drilling. Clearly they are not entitled to this amount of damages and the additional amount of $50,000 which it would have cost appellant to drill one well. The cost of drilling a well is the correct measure of damages for the breach of a drilling contract; but since the plaintiffs saw fit to plead and prove that the total amount which they would have realized, had said well been drilled and the premises thereafter been developed, was less than the cost of drilling, then by such allegations and proof they made such amount the measure of their damages. If the facts pleaded and proved by the plaintiff show that either of two measures of damages will fully compensate him for his loss, then that measure must be adopted which is less expensive to the defendant. Otherwise, the defendant would be penalized in the name of actual damages. Certainly the plaintiff in such a situation would not be allowed to add the two measures and recover for both, as was done in this case.

[10, 11] The item of $5,000 for destroying well No. 1 cannot stand. The facts disclose that well No. 1 was drilled to a depth of approximately 3,200 feet, at which depth a large volume of gas was encountered. To prevent this gas from going to waste appellant caused a control head to be placed upon and fastened to the top of the inside string of casing. The gas, being thus confined, soon developed enough pressure to raise the entire inner string of casing high up in the air. A few of the top joints of this string of casing broke off and the balance of the string fell back to the bottom of the hole. This item of $5,000

was awarded on the ground of negligence on the part of appellant in placing the control head upon the casing and confining the gas under the circumstances. This accident occurred more than two years prior to the filing of the original petition. The measure of damages contained in the charge of the court to the jury upon this item was the additional amount of royalties which said well would have produced had it not been damaged over and above the amount of royalties derived therefrom in the condition under which it was operated. We think the action for this element of damages was an action ex delicto and was barred by the two-year statute of limitation which ran before the filing of the original petition. We also think that this amount was necessarily included in the judgment for $25,000 for nondevelopment. Appellees were awarded $25,000 damages as the total value of the additional royalties which they would have received by a proper development of the entire premises. That would certainly include this item.

[12; 13] This brings us to a consideration of the item of $25,000 recovered on account of the failure of appellant properly to develop the premises. Appellees pleaded both an implied obligation to develop, resting upon the provisions of the written lease contract, and in addition thereto pleaded an express oral contract diligently to develop same. It is insisted by appellant that by expressly contracting with reference to this matter appellees cannot rely upon the implications of their lease. If the express oral contract pleaded and testified to by appellees should govern, our duty would be to reverse and render the entire cause, because the two-year statute of limitation would govern in that case and the cause of action for failure to develop would be lost by limitation. It is unquestionably the correct rule of law that if one's duties and obligations under a contract are clearly expressed, there is nothing to be left to implication, but all implications which would otherwise arise are superseded by the express agreement. The exact question for our decision is whether express oral agreements made contemporaneously with and in addition to a written lease contract supersede the implications of such contract. It is the settled law of this state that, upon accepting the lease involved in this case, it became appellant's duty, upon the discovery of oil and gas in paying quantities, to develop the premises diligently for the purpose of producing such oil and gas if same could be developed profitably to appellant. Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601.

[14] This obligation was in the minds of the parties and became a part of the written contract. The law is a part of every contract. The obligation to develop was therefore a written obligation, although not definitely expressed. Had the oral express agreement

required the doing of more or less drilling than was required by the implications of the written contract, such agreements would not have been binding, because varying the terms thereof. Van Zandt v. Desdemona Independent School District (Tex. Civ. App.) 283 S. W. 626, and authorities there cited. Boesen v. Potter County (Tex. Civ. App.) 173 S. W. 462.

[15] In this case the alleged oral agreement with reference to development neither added to nor subtracted from the duty resting upon appellant under the written lease, and therefore such agreement was nothing more than an oral understanding as to the implications of the lease. Appellees pleaded this oral contract and relied thereon for recovery. They also pleaded the written contract and relied upon the implications thereof. Under the great latitude allowed for pleadings in our state, we do not believe that appellees should be denied their rights under the written lease by a pleading setting up contemporaneous oral agreements. These agreements may be disregarded in determining appellees' rights as to this item of damages.

[16] Appellant insists that the implication to develop arises only after the exploratory or test well had been drilled; that it is an implication of law and not of fact, and is governed by the two-year statute of limitation, because not in writing. We cannot agree to this contention. We believe the implication to develop after drilling the exploratory well is a part of the written contract and is governed by the four-year statute of limitation. This element of damages was pleaded in the original and first amended petitions and is not barred by limitation.

[17] But we are unable to affirm this judgment as to the damages for nondevelopment. Special issue No. 9 submitted by the court to the jury was as follows:

"Has the defendant developed said premises with due diligence until said land has proven unproductive of oil or gas in paying quantities?"

To this issue the jury answered, "No."

To the submission of this issue the appellant timely objected and excepted on the ground, among others, that the court did not instruct the jury in connection therewith as to the meaning of the phrases "in paying quantities" and "due diligence." In its written objections and exceptions to the court's charge appellant requested the court to define these phrases as follows:

"Paying quantities means such an amount of production as would equal the cost of development and operation, and a reasonable profit in addition thereto," and "due diligence is such diligence as would be used by a reasonably prudent person under the same or similar circumstances."

Appellees contend that as such requests came in the body of the objections and exceptions to the court's charge, there was no duty resting upon the court to give same, because the submission thereof was not properly requested. This question was involved in the case of Foster v. Atlir (Tex. Com. App.) 215 S. W. 955, and a request for the submission of special issues in such form was held to be sufficient. This case and many others are cited and followed by the El Paso court in the case of Texas Nursery Co. v. Knight et al. (Tex. Civ. App.) 292 S. W. 588. Upon the authority of those cases this objection is overruled.

[18] It is further contended that the court was justified in refusing the requested instructions because same were embodied in special issue No. 18, which was as follows:

"Would an ordinarily prudent oil operator have drilled a third well on the Stuard lease under all of the facts and circumstances for the purpose of obtaining enough oil and gas to pay for the drilling and operation of same and a reasonable profit in addition thereto?"

We cannot agree that such refusal can be upheld on that ground. In order to return a proper answer to special issue No. 9, it was essential that the jury understand the meaning of the phrase "in paying quantities." That phrase has different meanings under different situations. Aycock v. Paraffine Oil Co. (Tex. Civ. App.) 210 S. W. 851.

[19] Appellant was entitled to an affirmative submission of these definitions, and we cannot say that it was not prejudiced by the failure of the trial court thus to submit them. Article 2189 R. S.; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517.

[20] We recognize that the implied obligation of appellant to develop under the lease contract arises only after the test well drilled thereon discloses the presence of oil and gas in paying quantities, and we are also aware of the fact that this record discloses that from well No. 1 there was realized less than the amount of money required to drill and complete the same; but we believe that if the test well drilled by appellant disclosed the existence of oil and gas in paying quantities, appellant's obligation to develop then attached, even though by reason of an accident to that well same did not produce enough oil and gas to pay the expenses of drilling. If the facts justify a finding by the jury that well No. 1 would have produced oil and gas in paying quantities, and its failure so to do was due to the negligence of appellant, and if the facts further justify the conclusion that oil and gas in sufficient quantities to pay the operator a reasonable profit on his operations would have been discovered by additional drilling, then the obligation of appellant to do such additional drilling is fixed.

Appellant earnestly insists that the evi-

dence in this case will not support such findings, and that judgment should be rendered in its favor on all of the items of which the judgment is composed. We believe that there was sufficient evidence to require the submission of the issues to the jury. It becomes unnecessary for us to decide whether the findings of the jury are so against the great and overwhelming weight and preponderance of the evidence as to warrant us to set them aside, because the case must be remanded on the grounds indicated, and the evidence may not be in all respects the same upon another trial.

There are many questions of law ably discussed in the briefs of both parties, but we do not think a discussion by us of any other questions raised would serve any useful purpose. It is our order that the judgment of the trial court, in so far as it includes damages for the destruction of well No. 1 and damages for the failure to drill a well, be reversed and here rendered for appellant, and that portion of the judgment based upon damages for failure to develop the premises be reversed and remanded.

Reversed and rendered in part. Reversed and remanded in part.

### On Rehearing.

[21] Appellees have furnished us a copy of a recent opinion by the Commission of Appeals in the case of Texas Co. v. Mrs. L. A. Ramsower et al., 7 S.W.(2d) 872, not yet [officially] published, and insists that our holding in the original opinion that the trial court erred in not defining "paying quantities" and "due diligence" is in conflict with a holding in that case. We shall therefore develop this point more fully than we did in the original opinion.

In the case of Texas Co. v. Ramsower it was held that an objection to the court's charge on the ground that it failed to instruct the jury on the measure of damages presents no error, unless the complaining party prepared and presented to the trial court a charge on the subject. The ground upon which the holding seems to rest is that the request was not a request for submission of a special issue, but was for a charge on the law of the case.

In this case a different question is presented. Article 2189, R. S. 1925, provides:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

The duty to define legal terms is statutory, and it has been uniformly held by the Supreme Court, so far as we are advised, that an objection to a charge on the ground of failure to include definitions of legal terms

employed therein is all that is required to preserve the question for review. Since our original opinion was handed down, there has been published an opinion by the Commission of Appeals, which was adopted by the Supreme Court, conclusively disposing of the question here presented. The case in which that opinion was written is Robertson & Mueller v. Holden, 1 S.W.(2d) 570. It is there held that failure of the trial court to define a legal term is reversible error, where specific objection was made to the charge on account of such failure, even though the party objecting to such charge failed to prepare and request a special charge relative to such term. To our minds that decision forecloses this question.

The reference of the Commission, in the opinion in the case of Texas Co. v. Ramsower, to the decision of the Fort Worth Court of Appeals upon a former appeal of this case has been called to our attention. There is nothing in this reference which, to our minds, would give to the opinion of the Fort Worth court any interpretation inconsistent with that which we have given it.

The motion for rehearing will be overruled.

FUNDERBURK, J., not sitting.